[No. S140308. Apr. 16, 2007.]

JOHN PAUL MURPHY, Plaintiff and Respondent, v.
KENNETH COLE PRODUCTIONS, INC., Defendant and Appellant.

## Counsel

Seyfarth Shaw, Robert W. Tollen and George E. Preonas for Defendant and Appellant.

Cooley Godward Kronish, Michelle C. Doolin, Lori R. E. Ploeger, Leo P. Norton and Kelly A. Weber for The Yankee Candle Company, Inc., as Amicus Curiae on behalf of Defendant and Appellant.

Steven B. Katz for Circuit City Stores, Inc., and Chevron U.S.A., Inc., as Amici Curiae on behalf of Defendant and Appellant.

Sidley Austin and Jeffrey A. Berman for California Association of Health Facilities as Amicus Curiae on behalf of Defendant and Appellant.

Law Offices of Steven Drapkin and Steven Drapkin for California Employment Law Council, Chamber of Commerce of the United States of America, California Chamber of Commerce, California Restaurant Association, Alliance of Motion Picture & Television Producers, Airline Industrial Relations Conference and California Lodging Industry Association as Amici Curiae on behalf of Defendant and Appellant.

Sheppard Mullin Richter & Hampton, Richard J. Simmons and Geoffrey D. DeBoskey for Employers Group, California Retailers Association, National Retail Federation and California Hospital Association as Amici Curiae on behalf of Defendant and Appellant.

Hastings Civil Justice Clinic, Donna M. Ryu, Nancy M. Stuart and Miye A. Goishi for Plaintiff and Respondent.

Weinberg, Roger & Rosenfeld, David A. Rosenfeld, Theodore Franklin, Suzanne M. Murphy, Patricia M. Gates, Anne I. Yen and Jessica Christensen for Alameda County Central Labor Council, California Conference of Machinists, Contra Costa County Central Labor Council, National California Carpenters Regional Council, SEIU United Healthcare Workers-West, South Bay Central Labor Council, California Labor Federation, AFL-CIO, and International Association of Machinists and Aerospace Workers, District Lodge 725, AFL-CIO, as Amici Curiae on behalf of Plaintiff and Respondent.

Cohelan & Khoury and Michael D. Singer for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Respondent.

California Rural Legal Assistance, Inc., Cynthia L. Rice; Legal Aid Society-Employment Law Center, Matthew Goldberg and Michael Gaitley for Maria Leticia Banda, Asian Law Caucus, Inc., Asian Pacific American Legal Center of Southern California, Bet Tzedek Legal Services, Centro Legal de La Raza, East Bay Community Law Center, Garment Worker Center, Golden Gate Women's Employment Rights Clinic, The Impact Fund, Katharine & George Alexander Community Law Center, Koreatown Immigrant Workers Alliance, La Raza Centro Legal, Legal Aid Foundation of Los Angeles, Neighborhood Legal Services of Los Angeles County, Stanford Community Law Clinic, Sweatshop Watch, Young Workers United and Rocia Zetina as Amici Curiae on behalf of Plaintiff and Respondent.

Neyhart, Anderson, Flynn & Grosboll, John L. Anderson and Scott M. DeNardo for California Teamsters Public Affairs Council and California Conference Board of the Amalgamated Transit Union as Amici Curiae on behalf of Plaintiff and Respondent.

Roxborough, Pomerance & Nye, Michael B. Adreani and Marina N. Vitek for Jennifer Augustus as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**MORENO, J.**—This case presents two issues: first, whether the "one additional hour of pay" provided for in Labor Code section 226.7 constitutes a wage or premium pay subject to a three-year statute of limitations (Code Civ. Proc., § 338) or a penalty subject to a one-year statute of limitations (Code Civ. Proc., § 340); second, whether a trial court, conducting a de novo trial, can consider additional wage claims not presented in the administrative proceeding before the state Labor Commissioner. We conclude that the remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations and that the trial

court properly considered the additional, but related, wage claims during the de novo trial. Accordingly, we reverse the contrary judgment of the Court of Appeal.

### FACTS AND PROCEDURAL HISTORY

As noted by the Court of Appeal, "the controlling historical facts as established by the trial court [are] largely undisputed."

Plaintiff John Paul Murphy worked as a store manager in a Kenneth Cole Productions (KCP) retail clothing store from June 2000 until June 19, 2002, during which he was paid a weekly salary. The store was open from 9:30 a.m. to 8:00 p.m., Monday through Saturday, and 11:00 a.m. to 6:00 p.m. on Sunday. On a typical day, Murphy and another employee arrived around 8:30 or 9:00 a.m. to open the store. Between 9:30 a.m. and 1:00 p.m., Murphy did nothing other than make sales, receive or transfer product, process markdowns and clean.

During a usual weekday afternoon, the second shift of either one or two people arrived at 1:00 p.m. The employee who had opened the store with Murphy would go to lunch, and Murphy and another employee would begin carrying merchandise into the stockroom while covering the sales floor. At some point, Murphy would go to the office to eat as he continued to work. By 2:00 p.m. he was either on the sales floor or working back in the stockroom. Murphy was scheduled to leave at 6:00 p.m., but he often would have customers on the sales floor, or would do some human resources paperwork.

Murphy's duties when he worked the closing shift from noon until 8:00 p.m. were essentially the same as when he worked the opening shift. On most days, he was on the sales floor or in the stockroom from 12:30 to 4:30 p.m. At 4:30 p.m. he would try to eat lunch while he checked KCP company voice mail and e-mail in the office, and then worked on the sales floor until closing time. After the store was closed, Murphy and a sales associate would verify the bank deposit, clean up the store, put shoes away, vacuum and empty the garbage. Typically, they would finish cleaning around 8:45 or 9:00 p.m.

Murphy regularly worked nine- to 10-hour days, during which he was only able to take an uninterrupted, duty-free meal period approximately once every two weeks. He rarely, if ever, had the opportunity to take a rest period and, on occasion, was unable to go to the restroom.

Murphy resigned on June 19, 2002. A friend told him that KCP had not been paying him correctly. On October 16, 2002, Murphy filed a wage claim with the Labor Commissioner. Murphy used the check-the-box form to raise

claims for unpaid overtime and waiting time penalties, but did not know he could make a claim for rest and meal period and itemized pay statement violations.[1] Even had he sought to file a claim for itemized pay statement violations, it is the policy of the Labor Commissioner to deny requests to file such claims.

On June 24, 2003, more than eight months after the initial filing of the wage claim, the Labor Commissioner conducted a hearing. The Labor Commissioner issued a decision in Murphy's favor on July 14, 2003, finding that KCP failed to establish that Murphy was an exempt employee and awarding unpaid overtime, interest, and waiting time penalties.

On August 6, 2003, KCP filed a notice for de novo review, which vested jurisdiction in the San Francisco Superior Court. On October 24, 2003, the Hastings College of the Law Civil Justice Clinic (Civil Justice Clinic) filed and served a notice of association of counsel to represent Murphy along with the Division of Labor Standards Enforcement (DLSE). On November 10, 2003, the Civil Justice Clinic and the DLSE filed a "Notice of Claims and Issues at De Novo Trial of Wage Claim." In addition to unpaid overtime, interest, and waiting time penalties, Murphy asserted claims for meal and rest period and itemized pay statement violations. KCP objected to the introduction of new claims, but the trial court, after requesting briefing from the parties on the matter, overruled the objections and considered the additional claims. The trial court reasoned that hearing the new claims served the interests of judicial economy, preserving the rights of the parties, and discouraging appeals by subjecting employers who appeal to additional liability.

In May 2004, the trial court filed its statement of decision and a judgment awarding Murphy unpaid overtime, payments for missed meal and rest periods, penalties for failing to furnish itemized pay statements, waiting time penalties and prejudgment interest. The court, applying the three-year statute of limitations in Code of Civil Procedure section 338, awarded payments for meal and rest period violations dating from October 2000. The court subsequently granted Murphy's motion for attorney fees and costs.

KCP appealed from the judgment of the trial court, arguing that the court erred in addressing claims for meal and rest period and itemized pay statement violations that had not been previously raised before the Labor

---

[1] Labor Code section 226, subdivision (a), lists the information that an employer must include on nonexempt employees' pay statements. Section 226, subdivision (e), entitles employees "suffering injury as a result of a knowing and intentional failure by an employer to comply" to recover the greater of actual damages or $50 for an initial violation and $100 for subsequent violations, plus costs and reasonable attorney fees.

Commissioner. KCP also contended that the payments ordered for the meal and rest period violations were penalties, and thus subject to the one-year statute of limitations in Code of Civil Procedure section 340.[2]

The Court of Appeal affirmed in part and reversed in part, holding that Labor Code section 226.7[3] payments assessed for meal and rest period violations are penalties subject to a one-year statute of limitations and that claims may not be raised for the first time on de novo appeal from an administrative hearing in front of the Labor Commissioner. We granted plaintiff's petition for review.

## DISCUSSION

### A. Section 226.7's "Additional Hour of Pay" Constitutes Wages

Section 226.7, subdivision (a) provides, "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."[4] Subdivision (b) of section 226.7 further provides that, "If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, *the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation* for each work day that the meal or rest period is not provided." (Italics added.) The trial court concluded that KCP did not provide Murphy the required meal or rest periods and accordingly awarded Murphy an "additional hour of pay" for each day Murphy was forced to work through a meal or rest period.

In deciding what statute of limitations governed Murphy's claims, the trial court considered whether the "additional hour of pay" provided for by section 226.7 constitutes a wage or a penalty. A three-year statute of limitations applies to the former (Code Civ. Proc., § 338, subd. (a) ["An action upon a liability created by statute, other than a penalty or forfeiture"]), while a one-year statute of limitations governs claims for penalties (Code Civ. Proc., § 340, subd. (a) ["An action upon a statute for a penalty or forfeiture"]). The trial court, analyzing the statutory language and finding that the

---

[2] KCP also appealed the trial court's determination that Murphy was a nonexempt employee. The Court of Appeal concluded KCP's argument "ha[d] no merit" and affirmed the judgment of the trial court. KCP asked this court to review the Court of Appeal's decision regarding Murphy's nonexempt status. We declined to do so.

[3] Unless otherwise stated, all further unlabeled statutory references are to the Labor Code.

[4] The Industrial Welfare Commission (IWC) is the state agency empowered to formulate wage orders governing employment in California. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561 [59 Cal.Rptr.2d 186, 927 P.2d 296].) The Legislature defunded the IWC in 2004, however its wage orders remain in effect. (*Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 902, fn. 2 [32 Cal.Rptr.3d 373].)

"hour of pay" primarily compensated employees for working through meal and rest periods, concluded that the pay provided for in the statute constitutes wages and is governed by the three-year statute of limitations. The trial court awarded payments for violations starting in October 2000.[5] The Court of Appeal reversed without analyzing the statutory language.

### 1. Statutory Language Suggests Section 226.7 Payment is a Wage

■ In determining whether the Legislature intended for the section 226.7 payment to constitute wages or a penalty, it is well settled that we must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) If the statutory language is clear and unambiguous our inquiry ends. "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808]; see *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].) In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) We have also recognized that statutes governing conditions of employment are to be construed broadly in favor of protecting employees. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 340 [17 Cal.Rptr.3d 906, 96 P.3d 194]; *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794 [85 Cal.Rptr.2d 844, 978 P.2d 2] (*Ramirez*); *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 985 [4 Cal.Rptr.2d 837, 824 P.2d 643].) Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].)

■ The Labor Code defines "wages" as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." (§ 200, subd. (a).) Courts have recognized that "wages" also include those benefits to which an employee is entitled as a part of his or her compensation, including money, room, board, clothing, vacation pay, and sick pay. (E.g., *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 780 [183 Cal.Rptr. 846, 647 P.2d 122]; *Department of Industrial Relations v. UI Video Stores, Inc.* (1997) 55 Cal.App.4th 1084, 1091 [64 Cal.Rptr.2d 457].)

---

[5] Murphy was employed by KCP from June 2000 to June 2002. From October through December 2000, remedies for meal and rest period violations were set out in an IWC wage order. Section 226.7 became effective on January 1, 2001.

A "penalty," on the other hand, is that "which an individual is allowed to recover against a wrong-doer, as a satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained . . . ." (*County of Los Angeles v. Ballerino* (1893) 99 Cal. 593, 596 [34 P. 329] (*Ballerino*); see also *County of San Diego v. Milotz* (1956) 46 Cal.2d 761, 766 [300 P.2d 1] (*Milotz*).) Penalties provide for " 'recovery of damages additional to actual losses incurred, such as double or treble damages . . . .' " (*Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1242 [78 Cal.Rptr.2d 566].)

Section 226.7, subdivision (b) requires that employees be paid "one additional hour of pay" for each workday that they are required to work through a meal or rest period. "Pay" is defined as "money [given] in return for goods or services rendered." (American Heritage Dict. (4th ed. 2000) p. 1291.) This definition is in keeping with the Labor Code definition of "wages."[6] Pursuant to IWC wage orders, employees are entitled to an unpaid 30-minute, duty-free meal period after working for five hours and a paid 10-minute rest period per four hours of work. (Cal. Code Regs., tit. 8, § 11070, subds. 11, 12.) If denied two paid rest periods in an eight-hour workday, an employee essentially performs 20 minutes of "free" work, i.e., the employee receives the same amount of compensation for working through the rest periods that the employee would have received had he or she been permitted to take the rest periods. An employee forced to forgo his or her meal period similarly loses a benefit to which the law entitles him or her. While the employee is paid for the 30 minutes of work, the employee has been deprived of the right to be free of the employer's control during the meal period. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 586 [94 Cal.Rptr.2d 3, 995 P.2d 139] [uncompensated time is time employees can effectively use " 'for [their] own purposes' "]; *Bono Enterprises, Inc. v. Bradshaw* (1995) 32 Cal.App.4th 968, 975 [38 Cal.Rptr.2d 549], disapproved on other grounds in *Tidewater Marine Western v. Bradshaw, supra,* 14 Cal.4th at p. 574.) Section 226.7 provides the only compensation for these injuries.

While the language of section 226.7, which is to be interpreted broadly in favor of protecting employees (*Ramirez, supra,* 20 Cal.4th at p. 794), appears to indicate the "additional hour of pay" provided for in subdivision (b) is a wage to compensate employees for the work described in subdivision (a), the language is also reasonably susceptible of an interpretation that the hour of pay is a penalty intended to punish the employer for denying employees their

---

[6] Indeed, the Legislature has frequently used the words "pay" or "compensation" in the Labor Code as synonyms for "wages." (E.g., §§ 96, subd. (h) ["vacation pay" and "severance pay"], 511 ["overtime compensation"], 1043 ["time off with pay"].) The same is true of the IWC wage orders. (E.g., Cal. Code Regs., tit. 8, § 11070, subds. 3 ["regular rate of pay" and "overtime compensation"], 5 ["reporting time pay"].)

meal and rest periods. As a result we look to extrinsic sources, such as the ostensible objectives to be achieved by the statute, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction and the statutory scheme of which the statute is a part. (*People v. Jefferson, supra,* 21 Cal.4th at p. 94; *People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

## 2. *Administrative and Legislative History Demonstrates Intent to Establish a Premium Wage to Compensate Employees*

We begin with the administrative and legislative history of the remedy for missed meal and rest periods.[7] Meal and rest periods have long been viewed as part of the remedial worker protection framework. (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 724 [166 Cal.Rptr. 331, 613 P.2d 579]; *Bono Enterprises, Inc. v. Bradshaw, supra,* 32 Cal.App.4th at p. 975.) Concerned with the health and welfare of employees, the IWC issued wage orders mandating the provision of meal and rest periods in 1916 and 1932, respectively. (*California Manufacturers Assn. v. Industrial Welfare Com.* (1980) 109 Cal.App.3d 95, 114–115 [167 Cal.Rptr. 203].) The wage orders required meal and rest periods after specified hours of work. The only remedy available to employees, however, was injunctive relief aimed at preventing future abuse. In 2000, due to a lack of employer compliance, the IWC added a pay remedy to the wage orders, providing that employers who fail to

---

[7] The court notes that the DLSE's interpretation of section 226.7 has not been consistent. When enacted, section 226.7 was generally interpreted as constituting "premium pay" or "wages." (E.g., DLSE Opn. Letter No. 2001.09.17, pp. 2–3 ["premium pay"]; DLSE Opn. Letter No. 2003.06.11, pp. 1–4 ["premium wage, not a penalty"] [withdrawn Dec. 20, 2004]; DLSE Opn. Letter 2003.10.17, p. 6 ["premium pay"]; but see DLSE Opn. Letter 2001.04.02, p. 4, fn. 2 ["penalty pay"] [withdrawn Dec. 20, 2004].) Indeed, the DLSE represented Murphy as cocounsel before the trial court, taking the position that section 226.7 pay constitutes wages and submitting the June 11, 2003 opinion letter to the trial court.

However, as the DLSE has acknowledged, the issue became highly politicized and, in December 2004, the DLSE withdrew four opinion letters discussing section 226.7. The DLSE then issued proposed regulations and a precedent decision interpreting the remedy as a penalty (*Hartwig v. Orchard Commercial, Inc.* (DLSE Precedent Dec. No. 2005–001, May 11, 2005); Gov. Code § 11425.60, subd. (b)), a "180 degree turn from its prior interpretations of that statute." (Sweeney, *Filling in the Gaps: The Scope of Administrative Agencies' Power to Enact Regulations* (2006) 27 Whittier L.Rev. 621, 662; *Cornn et al. v. United Parcel Service, Inc.* (N.D.Cal. Mar. 14, 2005, CV No. 03-2001) 2005 WL 588431, p. *4 ["DLSE's position has changed"].)

While the DLSE's construction of a statute is entitled to consideration and respect, it is not binding and it is ultimately for the judiciary to interpret this statute. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Additionally, when an agency's construction " 'flatly contradicts' " its original interpretation, it is not entitled to "significant deference." (*Henning v. Industrial Welfare Com.* (1988) 46 Cal.3d 1262, 1278 [252 Cal.Rptr. 278, 762 P.2d 442].)

provide a meal or rest period "shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day" that the period is not provided.[8] (Cal. Code Regs., tit. 8, § 11070, subds. 11(D), 12(B).)[9]

At the same time that the IWC was adding the pay remedy, Assemblymember Darrell Steinberg introduced Assembly Bill No. 2509 (1999–2000 Reg. Sess.) (Bill No. 2509) to codify a pay remedy via proposed section 226.7. (Bill No. 2509, § 12, as introduced Feb. 24, 2000.) In its original iteration, Bill No. 2509 proposed a dual strategy to address the problem of employees being forced to work through their meal and rest periods: (1) an explicit penalty provision, and (2) a separate payment to employees. (Bill No. 2509, § 12, as introduced Feb. 24, 2000.) The penalty provision provided that employers who failed to provide meal or rest periods would be subject to "A civil penalty of fifty dollars ($50) per employee per violation."[10] (Bill No. 2509, § 12, as introduced Feb. 24, 2000.) The employee payment provision in the original bill was similar to the one ultimately enacted (§ 226.7, subd. (b)). Employees who did not receive the mandated meal or rest periods would be paid an "amount equal to twice [the employee's] average hourly rate of compensation for the full length of the meal or rest periods during which the employee was required to perform any work." (Bill No. 2509, § 12, as introduced Feb. 24, 2000.) Although the original version of Bill No. 2509 provided for both a penalty and a payment to the employee, it limited the employees' recovery to the payment, leaving collection of the penalty to the Labor Commissioner, as had been the typical practice. (*Ibid.*; e.g., *Caliber Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365, 370 [36 Cal.Rptr.3d 31] [Labor Commissioner assesses and collects civil penalties]; e.g., § 210.)[11]

That the authors of Bill No. 2509 believed that the payment to the employee contained in the original version was independent of (and different from) its penalty provision is apparent both from the plain language of the

---

[8] The IWC added the remedy to sections 11 and 12 of the wage order, rather than section 20, which deals with penalties.

[9] The trial court determined that the wage order regulating wages, hours, and working conditions in the mercantile industry governed Murphy's employment. (Cal. Code Regs., tit. 8, § 11070.)

[10] This provision is akin to the penalties described in cases cited by the Court of Appeal, which involved awards of "an arbitrary sum in addition to, and unrelated to, actual damages . . . ." (E.g., *Prudential Home Mortgage Co. v. Superior Court, supra,* 66 Cal.App.4th at p. 1243; see also *Ballerino, supra,* 99 Cal. at p. 596; *Milotz, supra,* 46 Cal.2d at p. 766.)

[11] The Legislature later adopted the Labor Code Private Attorneys General Act of 2004 (§ 2698 et seq.) permitting, as an alternative, an aggrieved employee to initiate a private civil action to recover civil penalties if the Labor Commissioner does not do so. The penalties collected in these private civil actions are to be distributed 75 percent to the state and 25 percent to the aggrieved employee.

proposed statute and from comments in the Legislative Counsel's Digest and legislative committee reports. The Legislative Counsel's Digest for Bill No. 2509, in describing the effect of the proposed section 226.7, stated that it would subject employers both to a "penalty of $50 per violation *and* liab[ility] to the employee for twice the employee's average hourly . . . pay." (Legis. Counsel's Dig., Assem. Bill No. 2509 (1999–2000 Reg. Sess.) p. 4, as introduced Feb. 24, 2000, italics added.) Legislative committees underscored that the payment to the employee was not considered a penalty by use of the disjunctive, describing remedies available under Bill No. 2509 as "damages *or* penalties." (Assem. Com. on Lab. & Employment, Rep. on Assem. Bill No. 2509 (1999–2000 Reg. Sess.) Apr. 12, 2000, p. 3; Assem. Com. on Appropriations, Rep. on Assem. Bill No. 2509 (1999–2000 Reg. Sess.) May 10, 2000, p. 1, italics added.)

█ The Senate later amended Bill No. 2509, deleting the penalty provision. (Sen. Amend. to Assem. Bill No. 2509 (1999–2000 Reg. Sess.) Aug. 25, 2000, pp. 20–23.) This deletion, far from supporting KCP's position, is further evidence against it. "The rejection of a specific provision contained in an act as originally introduced is 'most persuasive' that the act should not be interpreted to include what was left out." (*Wilson v. City of Laguna Beach* (1992) 6 Cal.App.4th 543, 555 [7 Cal.Rptr.2d 848].) Indeed, the Legislature certainly knows how to impose a penalty when it wants to, having established penalties in many Labor Code statutes by using the word "penalty." In the vast majority of those statutes, the Legislature chose a fixed, arbitrary amount for the penalty. (E.g., §§ 226.3 [$250 for first violation, $1000 for subsequent violations], 1197.1 [$100 for initial violation, $250 for subsequent violations].) Other penalties took the form of double or treble damages. (E.g., § 230.8 [three times lost wages and benefits]; former § 2140.8 [double health insurance coverage fee].) These penalties are imposed in addition to any compensation for damages. (E.g., §§ 230.8 [penalty is in addition to recovery of lost wages], 1197.1 [penalty is in addition to recovery of unpaid wages].) All of these penalties are unlike the remedy contained in section 226.7, which provides the sole compensation for the employee's injuries, is measured by the employee's rate of pay rather than an arbitrary amount, and is not labeled a penalty.

The amendment to Bill No. 2509 made several other critical modifications. It changed the amount to be paid from twice the employee's rate of hourly compensation to "one additional hour of pay at the employee's regular rate of compensation . . . ." (Sen. Amend. to Assem. Bill No. 2509 (1999–2000 Reg. Sess.) Aug. 25, 2000, p. 23.) In discussing the amended version of section 226.7, which ultimately was signed into law, the Senate Rules Committee explained that the changes were intended to track the existing provisions of the IWC wage orders regarding meal and rest periods. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Bill. No. 2509, as amended

Aug. 25, 2000, p. 4.) The committee further stated that "[f]ailure to provide such meal and rest periods would subject an employer to *paying the worker one hour of wages* for each work day when rest periods were not offered" (*ibid.*, italics added), thereby indicating that it considered the "additional hour of pay" a wage rather than a penalty.

The Senate amendments also eliminated the requirement that an employee file an enforcement action, instead creating an affirmative obligation on the employer to pay the employee one hour of pay. (§ 226.7, subd. (b).) Under the amended version of section 226.7, an employee is entitled to the additional hour of pay immediately upon being forced to miss a rest or meal period. In that way, a payment owed pursuant to section 226.7 is akin to an employee's immediate entitlement to payment of wages or for overtime. (See *Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319, 326 [19 Cal.Rptr. 492, 369 P.2d 20].) By contrast, Labor Code provisions imposing penalties state that employers are "subject to" penalties and the employee or Labor Commissioner must first take some action to enforce them. The right to a penalty, unlike section 226.7 pay, does not vest until someone has taken action to enforce it. (*People v. Durbin* (1966) 64 Cal.2d 474, 479 [50 Cal.Rptr. 657, 413 P.2d 433].)

This version of Bill No. 2509 was ultimately passed by the Legislature and chaptered on September 29, 2000. The Legislature's decision not to label the section 226.7 payment a penalty is particularly instructive because it simultaneously established penalties explicitly labeled as such in provisions of Bill No. 2509 related to sections 203.1 and 226. (Assem. Bill No. 2509 (1999–2000 Reg. Sess.) approved by Governor, Sept. 28, 2000, §§ 3, 6.) In section 203.1, the Legislature imposed a penalty on employers who pay an employee with a check, draft, or voucher that subsequently is refused for insufficient funds. (§ 203.1 [wages continue as a penalty].) In section 226, the Legislature imposed a penalty on employers who fail to provide itemized wage statements that comply with the Labor Code. (§ 226, subd. (e) [$50 for initial violation, $100 for subsequent violations].) That the Legislature chose to eliminate penalty language in section 226.7 while retaining the use of the word in other provisions of Bill No. 2509 is further evidence that the Legislature did not intend section 226.7 to constitute a penalty. (*Penasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1188–1189 [283 Cal.Rptr. 135, 812 P.2d 154].)

In addition, the Legislature indicated in section 203 that it was aware it could, if it so desired, trigger a one-year statute of limitations by labeling a remedy a penalty. When an employer fails to pay an employee who has quit or been discharged, section 203 establishes that the unpaid wages continue to accrue as a "penalty" for up to 30 days. Knowing that remedies constituting

penalties are typically governed by a one-year statute of limitations, the Legislature expressly provided that a suit seeking to enforce the section 203 penalty would be subject to the same three-year statute of limitations as an action to recover wages. (§ 203.) It can be inferred from this that, had the Legislature intended section 226.7 to be governed by a one-year statute of limitations, the Legislature knew it could have so indicated by unambiguously labeling it a "penalty."

The Court of Appeal correctly notes that, while the word "penalty" was removed from section 226.7, the word appears at various times in both the legislative history of section 226.7 as well as the transcripts of IWC hearings at which the pay remedy was discussed. (Off. of Assem. Floor Analyses, analysis of Assem. Bill No. 2509 (1999–2000 Reg. Sess.) as amended Aug. 25, 2000, p. 2; transcript, IWC Public Hearing (June 30, 2000) p. 30, available online at <http://www.dir.ca.gov/IWC/PUBHRG6302000.pdf> [as of Apr. 16, 2007].) However, as explained below, statements made by IWC commissioners during hearings discussing the "hour of pay" remedy for meal and rest period violations leave no doubt that the remedy was being adopted as a "penalty" in the same way that overtime pay is a "penalty," although it is clear that overtime pay is considered a wage and governed by a three-year statute of limitations. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 167 [96 Cal.Rptr.2d 518, 999 P.2d 706] (*Cortez*).)

As has been recognized, in providing for overtime pay, the Legislature simultaneously created a premium pay to compensate employees for working in excess of eight hours while also creating a device "for enforcing limitation on the maximum number of hours of work . . . , to wit, it is a maximum hour enforcement device . . . ." (*California Manufacturers Assn. v. Industrial Welfare Com., supra,* 109 Cal.App.3d at p. 111, citation omitted.) Indeed, as the Court of Appeal acknowledges, courts have often referred to overtime wages as "premium or penalty pay." (E.g., *Industrial Welfare Com. v. Superior Court, supra,* 27 Cal.3d at p. 713 [" 'premium or penalty pay for overtime work' "]; *Skyline Homes, Inc. v. Department of Industrial Relations* (1985) 165 Cal.App.3d 239, 249 [211 Cal.Rptr. 792] [overtime is " ' "premium or penalty" ' "].) Describing overtime pay as both a "penalty" and as "premium pay" acknowledges that, while its central purpose is to compensate employees for their time, it also serves a secondary function of shaping employer conduct. However, neither the behavior-shaping aspect of overtime pay nor the fact that courts have referred to the remedy as a "penalty" transforms overtime wages into a "penalty" for the purpose of statute of limitations. (*Cortez, supra,* 23 Cal.4th at p. 167.)

It is in this same sense that the IWC used the word "penalty" to describe the meal and rest period remedy. For example, in the June 30, 2000 hearing at

which the IWC adopted the "hour of pay" remedy, IWC Commissioner Barry Broad described the remedy as a "penalty," explaining that it was needed to help force employers to provide meal and rest periods. (Transcript, IWC Public Hearing (June 30, 2000), pp. 25–26, 30, available online at <http://www.dir.ca.gov/IWC/ PUBHRG6302000.pdf> [as of Apr. 16, 2007].) "This [meal and rest pay provision applies to] an employer who says, 'You do not get lunch today, you do not get your rest break, you must work now.' That is—that is the intent. . . . And, of course, the courts have long construed overtime as a penalty, in effect, on employers for working people more than full—you know, that is how it's been construed, as more than the—the daily normal workday. It is viewed as a penalty and a disincentive in order to encourage employers not to. *So, it is in the same authority that we provide overtime pay that we provide this extra hour of pay.*" (*Id.* at p. 30, italics added.)

The IWC intended that, like overtime pay provisions, payment for missed meal and rest periods be enacted as a premium wage to compensate employees, while also acting as an incentive for employers to comply with labor standards. The manner in which the IWC used the word "penalty" undermines the Court of Appeal's reliance on the use of the word in the legislative history. The Court of Appeal points to a statement contained in the Assembly Floor analysis of the amended version of Bill No. 2509, which provided that the Senate's removal of the explicit penalty provision from section 226.7 "[d]elete[d] the provisions related to penalties for an employer who fails to provide a meal or rest period, and instead codif[ied] the lower penalty amounts adopted by the Industrial Welfare Commission (IWC)." (Off. of Assem. Floor Analyses, Assem. Bill No. 2509 (1999–2000 Reg. Sess.) as amended Aug. 25, 2000, p. 2.) However, the legislative history of Bill No. 2509 establishes that the Legislature was fully aware of the IWC's wage orders in enacting section 226.7. It follows that the Legislature's occasional description of the meal and rest period remedy as a "penalty" in the legislative history should be informed by the way in which the IWC was using the word; namely, that like overtime pay, the meal and rest period remedy has a corollary disincentive aspect in addition to its central compensatory purpose.[12]

 We conclude that the administrative and legislative history of the statute indicates that, whatever incidental behavior-shaping purpose section

---

[12] Assemblymember Steinberg wrote a letter urging Governor Gray Davis to sign Bill No. 2509. (Assemblymember Steinberg, letter to Governor Davis, Sept. 8, 2000.) Steinberg wrote that "the bill codifies the actions of the IWC establishing a penalty . . . ." (*Id.* at p. 2.) The use of the word "penalty" must be similarly read in light of the IWC's use of the word to describe the pay remedy. Additionally, we do not consider the " 'motives or understandings of individual legislators,' " including the bill's author. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699–700 [170 Cal.Rptr. 817, 621 P.2d 856].)

226.7 serves, the Legislature intended section 226.7 first and foremost to compensate employees for their injuries. This conclusion is consistent with our prior holdings that statutes regulating conditions of employment are to be liberally construed with an eye to protecting employees. (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 340; *Ramirez, supra,* 20 Cal.4th at p. 794; *Lusardi Construction Co. v. Aubry, supra,* 1 Cal.4th at p. 985.)

### 3. *"Functional" Analysis Does Not Undermine Conclusion That Payment Constitutes a Wage*

In concluding that the payment to the employee at issue here is a penalty, the Court of Appeal relied on what KCP describes as a "functional" analysis of the payment's effect.[13] The Court of Appeal reasoned that its conclusion is supported first by the remedy's purpose of shaping employer behavior and second by the fact that the "additional hour of pay" is imposed without regard to the actual loss suffered. Neither rationale is persuasive.

The first argument need not detain us long. As already discussed, the fact that section 226.7 seeks to shape employer behavior in addition to compensating the employee does not automatically render the remedy a penalty. Overtime pay is only one such example of a dual-purpose remedy that is primarily intended to compensate employees, but also has a corollary purpose of shaping employer conduct. Reporting-time and split-shift pay serve a similar dual function. (See *Huntington Memorial Hospital v. Superior Court, supra,* 131 Cal.App.4th at pp. 909–910.) For example, under IWC wage orders, when an employee is required to report for work and does report, but is not put to work or is given less than half the scheduled work, "the employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours, at the employee's regular rate of pay . . . ." (Cal. Code Regs., tit. 8, § 11070, subd. 5(A).) When an employee is required to work a "split shift" (is scheduled for two nonconsecutive shifts in the same day), the employer must pay the employee one additional hour of wages. (Cal. Code Regs., tit. 8, § 11070, subd. 4(C); see *Caliber Bodyworks, Inc. v. Superior Court, supra,* 134 Cal.App.4th at p. 381.)

In addition to compensating employees, reporting-time and split-shift pay provisions "encourag[e] proper notice and scheduling . . . [and are] an appropriate device for enforcing proper scheduling consistent with maximum

---

[13] None of the cases on which the Court of Appeal and KCP rely for their "functional" analysis involve the construction of Labor Code provisions, which are to be interpreted broadly in favor of the employee. (*Ramirez, supra,* 20 Cal.4th at p. 794.) Additionally, almost without exception, the statutes construed are part of schemes providing separate compensatory and punitive remedies, unlike section 226.7.

hours and minimum pay requirements." (*California Manufacturers Assn. v. Industrial Welfare Com., supra,* 109 Cal.App.3d at p. 112.) As with overtime, reporting-time and split-shift pay provisions do not become penalties for statute of limitations purposes simply because they seek to shape employer conduct in addition to compensating employees. (See *Caliber Bodyworks, Inc. v. Superior Court, supra,* 134 Cal.App.4th at pp. 377, 381 [split-shift pay is wages]; *Huntington Memorial Hospital v. Superior Court, supra,* 131 Cal.App.4th at pp. 909–910 [reporting-time pay is compensation].)

The Court of Appeal sought to distinguish overtime and other forms of wages from payments under section 226.7, arguing that because section 226.7 mandates that employers provide meal and rest periods, the pay provided for must constitute a penalty. But the Court of Appeal's underlying assumption, that payments made pursuant to statutory liability must constitute a penalty, is incorrect. For example, an employer's "[f]ailure to promptly pay [overtime wages is] unlawful." (*Cortez, supra,* 23 Cal.4th at p. 168.) Yet, the money recovered under Business and Professions Code section 17203 for an unlawful business practice is for disgorgement of the overtime wages and does not constitute a penalty. (23 Cal.4th at pp. 173–179.) Similarly, the Labor Code mandates the payment of a minimum wage and makes the payment of a lesser amount "unlawful." (§ 1197.) Nonetheless, this prohibition does not convert the remedy of recovering the unpaid balance of the full amount of the minimum wage (§ 1194, subd. (a)) into something other than a wage subject to a three-year statute of limitations.

■ KCP's second argument is that the "additional hour of pay" is a penalty because it is imposed without reference to actual damage, since an hour of pay is owed whether the employee has missed an unpaid 30-minute meal period, two paid 10-minute rest periods, or some combination thereof. We disagree. Section 226.7 pay is not transformed into a penalty merely because a one-to-one ratio does not exist between the economic injury caused by meal and rest period violations on the one hand and the remedy selected by the Legislature on the other hand. The Legislature has assigned different amounts to compensate employees for certain kinds of labor or scheduling resulting in a detriment to the employee. Courts have long recognized that the monetary value of harm to employees can be difficult to ascertain. (See, e.g., *California State Council of Carpenters v. Superior Court* (1970) 11 Cal.App.3d 144, 162 [89 Cal.Rptr. 625] [finding liquidated damages provision to be compensatory].) Where damages are obscure and difficult to prove, the Legislature may select a set amount of compensation without converting that remedy into a penalty. (*Overnight Motor Co. v. Missel* (1942) 316 U.S. 572, 583–584 [86 L.Ed. 1682, 62 S.Ct. 1216].)

For example, employees are paid one and one-half times their regular rate of pay for each hour of labor over eight hours. (§ 510, subd. (a).) Employees

are paid twice their regular rate of pay for hours worked in excess of 12 hours in a single day. (*Ibid.*) In the context of reporting-time pay, an employer must pay up to four hours of wages even if the employee performed *no* work. (Cal Code Regs., tit. 8, § 11070, subd. 5.) When working a split shift, employees are entitled to an additional hour of wages, even though the employee is already compensated for the hours he or she actually works. (*Id.*, subd. 4(C).)

Each of these forms of compensation, like the section 226.7 payment, uses the employee's rate of compensation as the measure of pay and compensates the employee for events other than time spent working. An employee working nine hours already receives his or her normal wage for that ninth hour. The Legislature has directed, however, that employers pay a premium wage of 50 percent more for the ninth through twelfth hour and a 100 percent premium for the hours in excess of 12. Employees receive reporting-time and split-shift compensation, even though they are already paid for the time they actually spend working.

The Court of Appeal's focus on the apparent lack of a perfect correlation between the section 226.7 remedy and the employee's economic injury also ignores the noneconomic injuries employees suffer from being forced to work through rest and meal periods. Employees denied their rest and meal periods face greater risk of work-related accidents and increased stress, especially low-wage workers who often perform manual labor. (See, e.g., Tucker et al., *Rest Breaks and Accident Risk* (Feb. 22, 2003) The Lancet, p. 680; Dababneh et al., *Impact of Added Rest Breaks on the Productivity and Well Being of Workers* (2001) 44 pt. 2 Ergonomics, pp. 164–174; Kenner, *Working Time, Jaeger and the Seven-Year Itch* (2004–2005) 11 Colum. J. Eur. L. 53, 55.) Indeed, health and safety considerations (rather than purely economic injuries) are what motivated the IWC to adopt mandatory meal and rest periods in the first place. (*California Manufacturers Assn. v. Industrial Welfare Com., supra*, 109 Cal.App.3d at pp. 114–115.) Additionally, being forced to forgo rest and meal periods denies employees time free from employer control that is often needed to be able to accomplish important personal tasks. (*Morillion v. Royal Packing Co., supra*, 22 Cal.4th at p. 586.)

While it may be difficult to assign a value to these noneconomic injuries (see *California State Council of Carpenters v. Superior Court, supra*, 11 Cal.App.3d at p. 162), the Legislature has selected an amount of compensation it deems appropriate. Indeed, construing the "one additional hour of pay at the employee's regular rate of compensation" (§ 226.7, subd. (b)) as a penalty would illogically result in an employer being "penalized" less or more, depending on the affected employee's rate of pay. Employers of the low-wage workers likeliest to suffer violations of section 226.7 (and, arguably, at greatest risk of injury) would be "penalized" less than employers of

highly paid workers. That the amount of the payment is linked to an employee's rate of compensation, rather than a prescribed fixed amount, further supports the position that section 226.7 payments are a form of wages. We conclude that neither the behavior-shaping function of section 226.7 nor the lack of a perfect fit between the pay remedy and the injury compels classifying the remedy as a penalty.

Finally, we recognize that the primary purpose of the statutes of limitation is to prevent plaintiffs from asserting stale claims once evidence is no longer fresh and witnesses are no longer available. (*Davies v. Krasna* (1975) 14 Cal.3d 502, 512 [121 Cal.Rptr. 705, 535 P.2d 1161].) Because employers are required to keep all time records, including records of meal periods, for a minimum of three years (Cal. Code Regs., tit. 8, § 11070, subd. 7(A)(3), (C)), employers should have the evidence necessary to defend against plaintiffs' claims. (See *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 961 [35 Cal.Rptr.3d 243].)

■ Accordingly, we hold that the Court of Appeal erred in construing section 226.7 as a penalty and applying a one-year statute of limitations. The statute's plain language, the administrative and legislative history, and the compensatory purpose of the remedy compel the conclusion that the "additional hour of pay" (*ibid.*) is a premium wage intended to compensate employees, not a penalty.

### B. *Scope of Section 98.2 De Novo Trial May Include Additional Related Wage Claims*

As recounted, Murphy filed a wage claim with the Labor Commissioner, only raising claims for unpaid overtime and waiting-time penalties, unaware he could also assert claims for meal and rest period and itemized pay statement violations. After the Labor Commissioner issued a decision in Murphy's favor, KCP filed a notice for de novo review, vesting jurisdiction in the superior court. Murphy, this time with the assistance of the Civil Justice Clinic and the DLSE, filed a "Notice of Claims and Issues at De Novo Trial of Wage Claim," asserting claims for meal and rest period and itemized pay statement violations in addition to the claims for unpaid overtime, interest, and waiting-time penalties. KCP objected to the introduction of the new claims, but the trial court overruled the objection and ultimately ruled in Murphy's favor on each claim. KCP contends the trial court erred in considering Murphy's additional claims. We disagree.

### 1. *Overview of the Berman Hearing Process*

■ In two recent cases, *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345 [127 Cal.Rptr.2d 516, 58 P.3d 367] (*Smith*), and *Post v.*

*Palo/Haklar & Associates* (2000) 23 Cal.4th 942 [98 Cal.Rptr.2d 671, 4 P.3d 928] (*Post*), we provided an extensive overview of the administrative wage claim process (commonly known as the Berman hearing procedure, after the name of its sponsor), including the de novo review provided for in section 98.2. (§ 98 et seq.) An employee pursuing a wage-related claim " 'has two principal options. The employee may seek *judicial* relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute. [Citation.] Or the employee may seek *administrative* relief by filing a wage claim with the [commissioner] pursuant to a special statutory scheme codified in sections 98 to 98.8 . . . .' " (*Smith, supra,* 29 Cal.4th at p. 350, citing *Cuadra v. Millan* (1998) 17 Cal.4th 855, 858 [72 Cal.Rptr.2d 687, 952 P.2d 704] (*Cuadra*), disapproved on another ground in *Samuels v. Mix* (1999) 22 Cal.4th 1, 16, fn. 4 [91 Cal.Rptr.2d 273, 989 P.2d 701].)

The Labor Commissioner "has broad authority to investigate employee complaints and to conduct hearings in actions 'to recover wages, penalties, and other demands for compensation . . . .' [Citation.]" (*Smith, supra,* 29 Cal.4th at p. 355.) "Within 30 days of the filing of a complaint, the commissioner must notify parties as to whether he or she will take further action. [Citation.] The statute provides for three alternatives: the commissioner may either accept the matter and conduct an administrative hearing [citation], prosecute a civil action for the collection of wages and other money payable to employees arising out of an employment relationship [citation], or take no further action on the complaint. [Citation.]" (*Post, supra,* 23 Cal.4th at p. 946.) If the commissioner decides to accept the matter and conduct an administrative hearing, he or she must hold the hearing within 90 days. (*Ibid.*)

▪ "Labor Code section 98, subdivision (a), expressly declares the legislative intent that hearings be conducted 'in an informal setting preserving the right of the parties.' The Berman hearing procedure is designed to provide a speedy, informal, and affordable method of resolving wage claims. [Citation.] As we explained in *Cuadra,* [*supra,* 17 Cal.4th at page 869] 'the purpose of the Berman hearing procedure is to avoid recourse to costly and time-consuming judicial proceedings in all but the most complex of wage claims.' [Citation.] [¶] . . . [¶]

"Within 15 days after the Berman hearing is concluded, the commissioner must file a copy of his or her order, decision, or award and serve notice thereof on the parties. [Citation.] The order, decision, or award must include a summary of the hearing and the reasons for the decision, and must advise the parties of their right to appeal. [Citation.]

 "Within 10 days after service of notice, the parties may seek review by filing an appeal to the municipal or superior court 'in accordance with the appropriate rules of jurisdiction, where the appeal shall be heard de novo.' [Citation.] The timely filing of a notice of appeal forestalls the commissioner's decision, terminates his or her jurisdiction, and vests jurisdiction to conduct a hearing de novo in the appropriate court. [Citation.]" (*Post, supra,* 23 Cal.4th at p. 947.)[14] "Although denoted an 'appeal,' unlike a conventional appeal in a civil action, hearing under the Labor Code is de novo. [Citation.] ' "A hearing *de novo* [under Labor Code section 98.2] literally means a new hearing," that is, a new trial.' [Citation.] The decision of the commissioner is 'entitled to no weight whatsoever, and the proceedings are truly "a trial anew in the fullest sense." ' [Citation.] The decision of the trial court, after de novo hearing, is subject to a conventional appeal to an appropriate appellate court. [Citation.] Review is of the facts presented to the trial court, which may include entirely new evidence. [Citations.]" (*Post, supra,* 23 Cal.4th at pp. 947–948.)

### 2. Trial Courts Have Discretion to Permit Additional Related Wage Claims at Section 98.2 De Novo Trial

The issue presented here, whether the trial court properly permitted additional related wage claims in the de novo trial that were not first considered by the Labor Commissioner, appears to be one of first impression. Section 98.2, subdivision (a), provides "Within 10 days after service of notice of an order, decision, or award the parties may seek review by filing an appeal to the superior court, where the appeal shall be heard de novo." In reversing the trial court's decision to consider the new claims, the Court of Appeal focused on the word "review," reasoning that the word limited the trial court's jurisdiction to a review of the claims considered by the Labor Commissioner.

 We have previously held that the section 98.2 proceeding is neither a conventional appeal nor review of the Labor Commissioner's decision, but is rather a de novo trial of the wage dispute. (*Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831, 835–836 [187 Cal.Rptr. 449, 654 P.2d 219], citing *Collier & Wallis, Ltd. v. Astor* (1937) 9 Cal.2d 202, 205 [70 P.2d 171].) The trial court "hears the matter, not as an appellate

---

[14] Although section 98 sets forth a maximum period of 145 days from the filing of a claim to a de novo appeal, we have acknowledged that section 98 authorizes the Labor Commissioner to "postpone or grant additional time." (§ 98, subd. (a); *Cuadra, supra,* 17 Cal.4th at p. 860.) Other procedures have been adopted that may "lengthen[] still further" the Berman process. (*Id.* at pp. 860–861.) As a result, the Berman process often takes significantly longer than 145 days. (*Id.* at pp. 860, 863.) Indeed, almost 10 months passed between the time Murphy filed his wage claim and KCP filed its notice of appeal.

court, but as a court of original jurisdiction, with full power to hear and determine it as if it had never been before the labor commissioner." (*Collier & Wallis, supra,* 9 Cal.2d at p. 205; see *Smith, supra,* 29 Cal.4th 345, 377 (conc. & dis. opn. of Kennard, J.).) An employee need not administratively exhaust his claim before filing a civil action. (*Smith, supra,* 29 Cal.4th at p. 355.) Our previous decisions suggest that a trial court's power to hear a wage dispute extends to the consideration of related issues not reached by the Labor Commissioner.

In *Post,* after conducting a Berman hearing on an employee's wage claim, the Labor Commissioner dismissed the claim on the ground that an employee-employer relationship had not been conclusively established. (*Post, supra,* 23 Cal.4th at p. 944.) The employee filed a section 98.2 notice of appeal and, after a de novo trial, the superior court found that the existence of an employment relationship had been established. (23 Cal.4th at p. 945.) Even though the Labor Commissioner had not reached the employee's claim for unpaid wages, the trial court proceeded to consider the wage claim and found in favor of the employee. (*Ibid.*) The Court of Appeal reversed, concluding that the trial court lacked jurisdiction to review the Labor Commissioner's jurisdictional determination and that the employee's sole remedy was to file an original civil action. (*Id.* at p. 946.) We disagreed, holding that the section 98.2 de novo hearing constitute a new trial and that the statute does not restrict a trial court's authority "to address a disputed question concerning any issue of law or fact . . . ." (23 Cal.4th at pp. 949–950.)

The Court of Appeal here distinguished *Post,* stating that there, the issue considered by the trial court and Labor Commissioner was identical, i.e., whether an employee-employer relationship existed. However, this characterization of *Post* ignores the fact that the trial court went beyond the scope of what the Labor Commissioner reached and considered the employee's claim for unpaid wages. Here, the trial court analogously exercised its discretion to consider wage claims that, while not previously considered by the Labor Commissioner, legally and factually flowed from the same underlying wage dispute—KCP's misclassification of Murphy as an exempt employee.[15]

Permitting trial courts to exercise jurisdiction over the entire wage dispute, including related wage claims not raised in front of the Labor Commissioner, is consistent with trial courts' broad discretion in adjudicating claims at trial.

---

[15] Murphy concedes that he could not have raised a non-wage-related claim such as a defamation or personal injury claim in the de novo trial. Indeed, a trial court exercising its discretion could determine that claims were not sufficiently related to allow their addition to the de novo trial. (*Sales Dimensions v. Superior Court* (1979) 90 Cal.App.3d 757, 764 [153 Cal.Rptr. 690] (*Sales Dimensions*).)

(*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203].) In *Sales Dimensions*, the Court of Appeal considered whether a trial court could deny discovery in a section 98.2 de novo trial and deny a motion to consolidate a pending civil action with the de novo trial. (*Sales Dimensions, supra*, 90 Cal.App.3d at p. 759.) The Court of Appeal held that both issues were properly left to the discretion of the trial court, an approach "consistent with the power of the courts 'to adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council.' [Citations.]" (*Id.* at p. 763.) The Court of Appeal noted that while section 98.2 vests the superior court with jurisdiction to hear the appeal de novo, "no procedures for exercising that jurisdiction are specified." (*Sales Dimensions, supra*, 90 Cal.App.3d at p. 764.) Similarly, whether an employee should be permitted to raise additional claims in the de novo proceeding is best left to the sound discretion of trial courts. Trial courts are equipped to weigh the various considerations, e.g., whether the claims are sufficiently related, whether the interests of judicial economy will be served, and whether the employer will be prejudiced.

As the Court of Appeal here acknowledged, Murphy could have filed a separate civil complaint raising the additional wage claims, at which point the trial court could have consolidated the civil action with the de novo proceeding and considered all of the claims together.[16] (*Sales Dimensions, supra*, 90 Cal.App.3d at p. 764.) However, forcing Murphy to file an original civil action to raise the additional claims "would appear inconsistent with the legislative purpose under Labor Code section 98 of providing an expeditious resolution of wage claims . . . ." (*Post, supra*, 23 Cal.4th at p. 951.) It is unclear what interest would be served by allowing trial courts to consolidate claims contained in a civil action with those at issue in a de novo trial, but prohibiting trial courts from exercising their discretion to permit employees to raise additional wage-related claims at the de novo trial.

Furthermore, the Court of Appeal's conclusion that the trial court erred in considering the additional wage claims undermines the legislative policy of encouraging employees to use the Berman process. For example, Murphy could not have raised his claims for itemized pay statements (§ 226) in the Berman process. Murphy submits the declaration of the Senior Deputy Labor Commissioner from the San Francisco DLSE District Office to the trial court, which averred that the Labor Commissioner "does not process claims for

---

[16] The trial court ruled that Murphy's claims for meal and rest period and itemized wage statement violations related back to the date of the original wage claim in October 2002. (See *Cuadra, supra*, 17 Cal.4th at pp. 869–870.) Murphy's claim for itemized wage statement violations, although undisputedly governed by a one-year statute of limitations, was accordingly timely. KCP did not appeal, nor did the Court of Appeal disturb, that aspect of the trial court's ruling.

record-keeping violations pursuant to California Labor Code 226(e). An individual who wanted to pursue such a claim before our office would be told that the claim could not be brought in our office, and would have to be filed in court."

If, as the Court of Appeal concluded, employees could not raise claims for itemized pay statement violations for the first time in a de novo hearing, three options would remain. An employee could: (1) file a civil complaint for the itemized pay statement violations and a separate wage claim before the Labor Commissioner for other wage claims and simultaneously pursue both avenues; (2) forgo the right to penalties for itemized pay statement violations, since by the time the Labor Commissioner issues a decision and a party files an appeal, the one-year statute of limitations governing penalties for itemized pay statement violations will almost certainly have run; or (3) forgo pursuing the Berman process and instead pursue civil litigation.

Each of these options discourages use of the Berman process and increases pressure to pursue civil litigation, a result at odds with the notion of a legislatively-favored administrative alternative to the judicial process. (See *Smith, supra,* 29 Cal.4th 345, 378–379 (conc. & dis. opn. of Kennard, J.).) The Legislature could not have intended to force employees to choose between effectively waiving claims and pursuing the Berman process. The Court of Appeal's interpretation of section 98.2 would put an employee using the Berman process in a worse position than an employee proceeding directly to court. (See *Smith, supra,* 29 Cal.4th at pp. 378–379 (conc. & dis. opn. of Kennard, J.); *Cuadra, supra,* 17 Cal.4th at p. 870.)

Finally, allowing trial courts to exercise their discretion in deciding whether to permit employees to raise additional related wage claims is consistent with the Legislature's intent "to discourage frivolous and unmeritorious appeals from the commissioner's awards." (See *Smith, supra,* 29 Cal.4th at p. 361 [discussing section 98.2's fee-shifting provision, under which parties who file a section 98.2 appeal and lose are obliged to pay the fees of the other parties].) A party who appeals a Labor Commissioner award does so at its own peril. If the employer appeals, and the employee obtains representation, it is likely that the employee's attorneys will uncover additional, related facts and claims not thoroughly examined at the administrative level when the claimant was unrepresented. Just as an employer is not bound by the defenses it raised in the Berman process, but rather is entitled to abandon, change, or add defenses not brought before the Labor Commissioner (see *Jones v. Basich* (1986) 176 Cal.App.3d 513, 518–519 [222 Cal.Rptr. 26]), so may an employee raise additional wage-related claims in the de novo trial.

Accordingly, we hold that the Court of Appeal erred in construing section 98.2 to preclude the trial court from permitting Murphy to raise additional related wage claims in the de novo trial. The trial court properly exercised its discretion.

DISPOSITION

We hold that section 226.7's plain language, the administrative and legislative history, and the compensatory purpose of the remedy compel the conclusion that the "additional hour of pay" is a premium wage, not a penalty. We further hold that the trial court properly exercised its discretion in deciding to consider the additional, but related, wage claims during the de novo trial. The contrary judgment of the Court of Appeal is reversed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.