[No. B227190. Second Dist., Div. Eight. June 2, 2011.]

UNITED PARCEL SERVICE WAGE AND HOUR CASES.

UNITED PARCEL SERVICE, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WILLIAM M. ALLEN et al., Real Parties in Interest.

## COUNSEL

Paul, Hastings, Janofsky & Walker, M. Kirby C. Wilcox, George W. Abele and Elena R. Baca for Petitioner.

No appearance for Respondent.

Furutani & Peters, John A. Furutani; Duckworth, Peters & Lebowitz and Mark C. Peters for Real Parties in Interest.

**OPINION**

**BIGELOW, P. J.—**

## INTRODUCTION

Labor Code section 226.7 requires an employer who fails to provide an employee with a meal or rest period to pay that employee one additional hour of pay (or premium payment) "for each work day that the meal or rest period is not provided."[1] The question before us is whether this statute authorizes one premium payment per workday regardless of the number or type of break periods that were not provided, or two premium payments per workday—one for failure to provide a meal period and another for failure to provide a rest period. We conclude section 226.7 permits up to two premium payments per workday.

## FACTUAL AND PROCEDURAL BACKGROUND

United Parcel Service, Inc. (UPS), is the employer defendant in 32 coordinated actions by employees who are seeking compensation for, among other things, UPS's alleged failure to provide meal and rest periods pursuant to section 226.7. That statute provides: "(a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission. [¶] (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

UPS moved the trial court to sever and make a pretrial determination concerning the amount of damages available under Labor Code section 226.7. (See Code Civ. Proc., § 1048, subd. (b).) UPS argued that only one premium payment is allowable per workday, regardless of the number or type of break periods that were not provided. The employee plaintiffs disagreed, contending Labor section Code 226.7, as well as the Industrial Welfare Commission's (IWC) wage order No. 9-2001 (which applies to employees in the transportation industry), allow up to two premium payments per workday—one for failure to provide meal periods, and another for failure to provide rest periods.

After a full hearing on the motion, the trial court disagreed with UPS and concluded section 226.7 allowed up to two premium payments per workday.

---

[1] All further references are to the Labor Code, unless otherwise indicated.

Among other things, the court found persuasive a recent federal district court case decided in Los Angeles where the court held the IWC's wage orders provided "a separate remedy for violations of meal period requirements and violations of rest period requirements" and that allowing recovery of up to two premium payments per workday—one for each type of violation—was not inconsistent with the language of section 226.7. (*Marlo v. United Parcel Service, Inc.* (C.D.Cal., May 5, 2009, CV 03-04336 DDP (RZx)) 2009 U.S.Dist. Lexis 41948, p. *21 (*Marlo*).)

UPS filed a petition for writ of mandate challenging the trial court's ruling, arguing section 226.7 precludes more than a single premium payment per workday, despite the fact an employer may have failed to provide both a meal and rest period in a particular day. We issued an order to show cause and heard oral argument in order to determine this significant legal issue and provide some guidance in the numerous coordinated cases before the trial court. (See *Babb v. Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *Hogya v. Superior Court* (1977) 75 Cal.App.3d 122, 129 [142 Cal.Rptr. 325].)

## DISCUSSION

1. *Principles of Statutory Interpretation and Standard of Review.*

■ Our most important task in construing a statute is to ascertain the intent of the lawmakers and effectuate the purpose of the statute. Our first step is to examine the statutory language, giving the words a plain and commonsense meaning. (Code Civ. Proc., § 1859; *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) The meaning of a statute may not be determined from a single word or sentence and the words must be construed in context. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) We do not give statutory language a literal construction if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. (*People v. Belton* (1979) 23 Cal.3d 516, 526 [153 Cal.Rptr. 195, 591 P.2d 485].)

■ If the statutory language is clear and unambiguous there is no need for statutory construction or to look to the intent of the Legislature. (*People v. Ramirez* (1995) 33 Cal.App.4th 559, 563 [39 Cal.Rptr.2d 374].) However, if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed. (*Metropolitan Water Dist. v. Adams* (1948) 32 Cal.2d 620, 630–631 [197 P.2d 543].) The interpretation of a

statute is a question of law subject to our independent review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].)

■ We must also be cognizant of the fact that in light of the remedial nature of legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, such provisions are to be liberally construed with an eye to promoting such protection. (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794 [85 Cal.Rptr.2d 844, 978 P.2d 2].) Because section 226.7 is a statute governing the conditions of employment, it must be construed broadly in favor of protecting employees. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284] (*Murphy*) [holding the remedy in § 226.7 is not a penalty but rather a "premium wage" intended to compensate employees for failure to provide meal and rest periods].)

## 2. *The IWC Orders and Meal and Rest Period Requirements.*

■ In order to provide context to our discussion of the premium pay provision of section 226.7, subdivision (b), we set forth the relevant terms of the IWC's wage orders and the meal and rest period requirement. Subdivision (a) of the statute prohibits employers from requiring their employees to work during any meal or rest period as "mandated by an applicable order of the [IWC]," a state agency empowered to formulate wage orders governing employment in California. (*Murphy, supra*, 40 Cal.4th at p. 1102, fn. 4.) While the Legislature defunded the IWC in 2004, its wage orders remain in effect. (*Ibid.*)

The IWC originally issued wage orders mandating the provision of meal and rest periods in 1916 and 1932, respectively. It did so because it was concerned with the health and welfare of employees. However, the only remedy available to employees was injunctive relief aimed at preventing future abuse. (*Murphy, supra*, 40 Cal.4th at p. 1105.) In 2000, due to lack of employer compliance with the break periods, the IWC added a pay remedy to its wage orders. (*Id.* at pp. 1105–1106; see also § 516, authorizing the IWC to adopt orders concerning break periods.)[2]

The IWC's wage orders treat meal periods and rest periods in separate sections, each providing the additional hour of pay per workday for the designated type of violation. Together, the sections provide, among other things, that employees are entitled to an unpaid 30-minute meal period after

---

[2] The IWC issued 17 such orders, each of which apply to various types of employment. (See Cal. Code Regs., tit. 8, §§ 11010–11170.)

working for five hours and a 10-minute rest period per four hours of work. (See Cal. Code Regs., tit. 8, § 11090, subds. 11(A) & 12(B); *Murphy, supra,* 40 Cal.4th at p. 1104.) With regard to the remedy for meal periods, the wage orders provide that "[i]f an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." (Cal. Code Regs., tit. 8, § 11090, subd. 11(D).) Concerning rest periods, the wage orders provide that "[i]f an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided." (*Id.,* subd. 12(B).)

As will be further discussed below, the wording used in the IWC wage orders is virtually identical to the wording used in subdivision (b) of section 226.7, except that instead of having separate sections for the meal and rest periods, the Legislature chose to describe both break periods together so that the additional hour of pay is for "each work day that the meal *or* rest period is not provided." (Italics added.)

### 3. *The* Marlo *Decision.*

While a California court has not decided in a published opinion whether section 226.7 permits two premium payments per workday rather than just one, the federal district court in *Marlo* squarely faced and decided this issue. Because the court's decision is instructive, we discuss it in detail. (See *People v. Zapien* (1993) 4 Cal.4th 929, 989 [17 Cal.Rptr.2d 122, 846 P.2d 704] [decisions of lower federal court cases are not binding]; *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1301, fn. 11 [42 Cal.Rptr.3d 268] [unpublished federal district court cases are citable as persuasive authority].)

In *Marlo,* employees sued UPS for, among other things, payment of meal and rest breaks under section 226.7. In the context of deciding proper jury instructions, the parties disagreed, as they do in this case, on how many additional hours the employee could receive in the event he missed one or more meal periods *and* one or more rest periods on any particular workday. Focusing on the use of the disjunctive "meal or rest period" in subdivision (b), the employee argued "or" signals the violation of a rest break requirement constitutes two separate violations thereby suggesting each *type* of violation, whether meal or rest period, can lead to one hour of extra compensation. (*Marlo, supra,* 2009 U.S.Dist. Lexis 41948 at p. *13.) UPS focused on the words "work day" and argued, precisely as it does here, that even where distinct violations have occurred, the statute compensates per

"work day." UPS argued the statute permits a single additional hour of pay for that day, even if multiple violations of the rest break requirements have occurred. (*Id.* at p. *14.)

The district court concluded both parties presented a reasonable way to parse section 226.7, subdivision (b) and therefore looked to the structure of the IWC wage order for guidance. The employee argued that the statute required the premium payment if the meal or rest period was not provided " 'in accordance with an applicable order of the [IWC],' " which the employee asserted was an intent to incorporate the language of the wage order. (*Marlo, supra,* 2009 U.S.Dist. Lexis 41948 at p. *14.) The court concluded the structure of the wage order—setting out the requirements for meal and rest breaks in two separate sections—supported the employee's position that up to two premium payments were permitted. But the court ultimately found the structure of the wage order unhelpful in deciphering the Legislature's intent. Significantly, the court pointed out that the "in accordance with" language is located *only* in the first clause of subdivision (b)—the clause describing *when* an employer violates section 226.7 and not in the second clause of subdivision (b), which describes *what* the employer must pay when a meal or rest period is not provided. (2009 U.S.Dist. Lexis 41948 at p. *15.)

The district court next looked to the legislative history. The court recognized that both section 226.7 and the final wage orders became effective at the same time (Jan. 1, 2001) and that the Legislature was cognizant of the IWC's wage orders when it passed section 226.7, thereby tending to support the employee's reading of the statute. Nonetheless, the court found the legislative history was inconclusive. (*Marlo, supra,* 2009 U.S.Dist. Lexis 41948 at pp. *15–*16.)

The federal court finally decided the best resolution was to look to the wage order itself. The court determined the wage order provides a separate remedy for violations of meal period requirements and for violations of rest period requirements, concluding, "Allowing an employee to recover one hour of pay for each *type* of violation listed in the statute per work day is not contrary to the 'one additional hour' 'per work day' language in § 226.7(b). . . . [¶] [The employee] may recover up to two additional hours of pay on a single work day for meal period and rest break violations: one if any meal period violations occur in a work day and one if any rest break violations occur in a work day." (*Marlo, supra,* 2009 U.S.Dist. Lexis 41948 at pp. *21–*22, original italics; see also *Schuyler v. Morton's of Chicago, Inc.* (C.D.Cal., Jan. 25, 2011, CV 10-06762 ODW (JCGx)) 2011 U.S.Dist. Lexis 10130, pp. *12–*13 and *Lara v. Trimac Transportation Services (Western)* (C.D.Cal., Aug. 6, 2010, CV 10-4280-GHK (JCx)) 2010 U.S.Dist. Lexis 82420, pp. *10–*11 [both following *Marlo*'s conclusion that § 226.7 allows

an employee to recover up to two additional hours of pay on a single work day]; *Coleman v. Estes Express Lines, Inc.* (C.D.Cal. 2010) 730 F.Supp.2d 1141, 1148–1149 [concluding class member employees were entitled to "one hour of pay for each work day that the meal period was not provided and also one hour of pay for each work day that the rest period was not provided"].)

### 4. *Section 226.7 Permits Up to Two Premium Payments Per Workday.*

We agree with the district court in *Marlo* that the interpretations advanced by the parties are both reasonable, depending upon the words that are the focus of the argument. On the one hand, focusing on the disjunctive in section 226.7, subdivision (b), which states "meal *or* rest period" (italics added), it is not unreasonable to construe it as allowing one additional hour of pay for failure to provide a meal period, and another hour of pay for failure to provide a rest period. In other words, the disjunctive signals that there may be two separate violations with a corresponding remedy of one additional hour of pay for that violation in a given workday. On the other hand, if the latter portion of subdivision (b) becomes the focal point, then it could be argued that the words "compensation *for each work day*" set out one single payment per workday, whether there is a failure to provide a meal period "or" failure to provide a rest period. Because we believe section 226.7 is reasonably susceptible to alternative interpretations, we look to extrinsic sources, such as its legislative history, to determine the Legislature's intent. (*Murphy, supra,* 40 Cal.4th at pp. 1105–1106.)[3]

The administrative and legislative history reveals that on June 30, 2000, at a public hearing, the IWC amended its then existing wage orders by adopting the premium pay remedy for violations of the meal and rest period requirements. (*Murphy, supra,* 40 Cal.4th at pp. 1109–1110.)[4] The IWC issued wage

---

[3] UPS asks us to take judicial notice of section 226.7's legislative history and the administrative records of the IWC's wage orders. The motion is granted. In considering the applicable legislative history, the employee plaintiffs ask that we accept the declaration of an attorney who worked for the Division of Labor Standards and Enforcement (DLSE), part of the Department of Industrial Relations, as to his experience in the development of the IWC's wage orders. Because this declaration was rejected by the trial court and is unnecessary to our analysis, we decline to consider it.

[4] IWC Commissioner Barry Broad stated at the June 30, 2000 public hearing that he wanted to "amend the language that's in there to make it clearer . . . that what it would require is that on any day that an employer does not provide a meal period or rest period in accordance with our regulations, that it shall pay the employee one hour—one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided." (Transcript, IWC Public Hearing (June 30, 2000) pp. 25–28, 34–35, available at <http://www.dir.ca.gov/iwc/PUBHRG6302000.pdf> [as of June 2, 2011].)

A subsequent notice of the actions taken at the June 30, 2000 hearing confirmed that wage orders Nos. 1-2001 to 13-2001 and 15-2001 were amended as follows: "If an employer fails to provide an employee a meal period or rest period in accordance with the applicable provisions

order No. 9-2000, along with many other similar wage orders for other industries, indicating it would be effective October 1, 2000.[5] Those wage orders had a section dealing with the premium pay remedy for meal periods and a separate section for rest periods, exactly as the final and current version of the wage orders which became effective January 1, 2001. (See IWC wage order No. 9-2001, Cal. Code Regs., tit. 8, § 11090, subds. 11(D) & 12(B).)[6]

At the same time the IWC was adding the premium pay remedy to its wage orders, Assemblymember Darrell Steinberg introduced Assembly Bill No. 2509 (1999–2000 Reg. Sess.) (Assembly Bill 2509) as a means of enforcing the existing wage order prohibitions against requiring an employee to work during a meal or rest period. (Assem. Com. on Labor and Employment, Analysis of Assem. Bill 2509, Feb. 24, 2000, pp. 2, 4, 6–7; *Murphy, supra,* 40 Cal.4th at p. 1106.) As originally introduced, Assembly Bill 2509 proposed an explicit penalty provision and a separate payment to employees. (*Ibid.*)[7] In August 2000, the Senate deleted the penalty provision and changed the amount to be paid to employees from twice their rate of hourly compensation to "one additional hour of pay at the employee's regular rate of compensation." (Sen. Amend. to Assem. Bill 2509, Aug. 25, 2000, p. 23; see *Murphy, supra,* 40 Cal.4th at p. 1107.)

In discussing the amended version of Assembly Bill 2509, which ultimately was signed into law, "the Senate Rules Committee explained that the changes were intended to track the existing provisions of the IWC wage orders regarding meal and rest periods." (*Murphy, supra,* 40 Cal.4th at

---

of these orders, it shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." (IWC, Notice of Actions Taken Public Hearing (June 30, 2000) available at <http://www.dir.ca.gov/iwc/Amendedagenda6302000.html> [as of June 2, 2011]; see also IWC, Notice of Public Hearing (June 30, 2000) Sacramento, available at <http://www.dir.ca.gov/iwc/6302000 hearingnotice.html> [as of June 2, 2011].)

[5] IWC wage order No. 9-2000 Regulating Wages, Hours, and Working Conditions in the Transportation Industry (Oct. 1, 2000), available, at <http://www.dir.ca.gov/iwc/Wageorders2000/ IWCArticle9.pdf> sections 11(D), 12 (as of June 2, 2011).

[6] IWC wage order No. 9-2001 Regulating Wages, Hours and Working Conditions in the Transportation Industry, available at <http://www.dir.ca.gov/IWC/IWCArticle9.pdf> (as of June 2, 2011).

[7] The original version of Assembly Bill 2509 provided, "An employer that violates this section shall be subject to both of the following: [¶] (1) A civil penalty of fifty dollars ($50) per employee per violation. [¶] (2) Payment to the aggrieved employee of an amount equal to twice his or her average hourly rate of compensation for the full length of the meal or rest periods during which the employee was required to perform any work. An employee paid on a piecework basis shall be entitled to an amount equal to twice the amount of piecework units earned during those periods, but in no event shall the amount be less that the applicable state minimum wage for the full length of those time periods during which any work was performed." (Assem. Bill 2509, § 12, as introduced Feb. 24, 2000.)

pp. 1107–1108; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 2509, as amended Aug. 25, 2000, p. 4.) Similarly, the Assembly concurrence in the Senate amendments described the amendment as "[d]elet[ing] the provisions related to penalties for an employer who fails to provide a meal or rest period, and instead codify[ing] the lower penalty amounts adopted by the [IWC]." (Assem. Floor Analysis, Conc. in Sen. Amends., Analysis of Assem. Bill 2509, as amended Aug. 25, 2000, p. 2.) Consistently, in a postpassage letter sent to the Governor, the author of the bill stated the bill codified the "actions of the IWC" establishing a pay remedy and "has been amended to conform to the IWC levels." (Assemblymember Steinberg, letter to Governor Davis regarding Assem. Bill 2509, Sept. 8, 2000, p. 2; see *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 590 [128 Cal.Rptr. 427, 546 P.2d 1371] [a legislator's statement may be considered when it reiterates legislative discussion and events leading to adoption to proposed amendments, rather than merely expressing a personal opinion].) The amended version of Assembly Bill 2509 was passed by the Legislature on August 30, 2000, and chaptered on September 29, 2000, to be effective January 1, 2001. (Gov. Code, § 9600, subd. (a).)

Based upon the above history, there can be no doubt that "the Legislature was fully aware of the IWC's wage orders in enacting section 226.7." (*Murphy, supra*, 40 Cal.4th at p. 1110.) Indeed, it would be appropriate to conclude that the Legislature completely rewrote section 226.7's original wording in order to match the premium payment provisions adopted by the IWC. Nonetheless, the parties disagree as to the precise premium payment provisions that were adopted by the IWC at the time the Legislature amended and passed Assembly Bill 2509.

UPS argues IWC wage order No. 9-2000—which sets out the premium pay remedy for meal and rest breaks in two separate sections—could not possibly reflect the IWC premium pay provisions the Legislature had in mind when amending and passing Assembly Bill 2509 because it was not effective until October 1, 2000, after the bill was passed. Rather, UPS contends the effective provision at the time is reflected in Commissioner Broad's statement made and adopted at the June 30, 2000 public hearing, a provision which simply tracks the language of section 226.7 that was ultimately enacted.[8] The employees argue that since 1990, the IWC's wage orders have all continuously had separate sections dealing with the requirements for meal and rest periods.[9] When the IWC adopted the pay remedy on June 30, 2000, it

---

[8] See footnote 4, *ante*, page 65.

[9] The IWC adopted wage order No. 9-90 in 1990, to be effective July 1, 1990. It had a section dealing with the requirements for providing meal periods, and a separate section dealing with the requirements for rest periods. In 1998, wage order No. 9-98 went into effect.

expressly intended to amend these existing wage orders, without any indication that the separate sections would be merged or consolidated into a single section. Therefore, the employees assert that the IWC's adoption of the pay remedy on June 30, 2000, was in reference to amending each section in the existing wage orders to include a one hour premium payment for each type of violation, as was ultimately reflected in IWC wage order No. 9-2000.

As already noted, and as the district court in *Marlo* appropriately concluded, the wage orders are structured in such a way that they provide a separate remedy for violations of meal period or violations of rest period requirements, indicating that up to two premium payments are allowed per work day—one for each type of violation. But it is not perfectly clear whether the Legislature specifically had IWC wage order No. 9-2000 in mind when it amended and passed Assembly Bill 2509 on August 30, 2000. While it is reasonable to believe that the IWC issued wage order No. 9-2000 at some point between the time of the IWC's public hearing in June 2000 and the end of August 2000 (even though it would not become "effective" until Oct. 1, 2000), and that the Legislature was cognizant of it when it amended and passed Assembly Bill 2509, there does not appear to be a legislative or administrative record clearly indicating that this is the case.

What does seem clear is that from October 1, 2000, to the present day, the IWC's wage orders have consistently provided a separate remedy for violations of meal period requirements and violations of rest period requirements, indicating that up to two premium payments are allowed per work day. If the Legislature believed the formulation in the wage orders did not accurately reflect the premium payment remedy intended by Assembly Bill 2509 and that section 226.7 is restricted to only one premium payment per work day, it could have amended the statute to clarify this intent. The Legislature has never done so, suggesting the wage orders reflect the remedy intended by section 226.7. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 22 [78 Cal.Rptr.2d 1, 960 P.2d 1031] (conc. opn. of Mosk, J.) [" ' "[L]awmakers are presumed to be aware of long-standing administrative practice and, thus, the . . . failure to substantially modify a provision, is a strong indication [that] the administrative practice was consistent with underlying legislative intent." ' "].)[10]

---

As with wage order No. 9-90, it had separate sections addressing meal periods and rest breaks. (See IWC wage order No. 9-98 Regulating Wages, Hours, and Working Conditions in the Transportation Industry, available at <http://www.dir.ca.gov/iwc/Wageorders1998/IWCArticle9.pdf> [as of June 2, 2011].) Interim wage order No. 2000 went into effect on March 1, 2000, and by its own terms reinstated wage order No. 9-90. (See IWC, Official Notice—Summary of Interim Wage Order-2000, available at <http://www.dir.ca.gov/iwc/SummaryInterimWageorder2000.pdf> [as of June 2, 2011].)

[10] It is the DSLE that is empowered to enforce California's labor laws, including IWC wage orders. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561–562 [59

■ Therefore, while section 226.7 is reasonably susceptible of alternative interpretations (one allowing a single premium payment per work day and another allowing up to two), we believe it is more reasonable to construe the statute as permitting up to two premium payments per workday—one for failure to provide one or more meal periods, and another for failure to provide one or more rest periods. We realize the wording in section 226.7, subdivision (b), is not identical to the wage orders. As noted, the statute provides for one additional hour of pay for each work day that the "meal or rest period" is not provided, while the wage orders have one section allowing for an additional hour of pay when a "meal period" is not provided and another section allowing for an additional hour of pay when a "rest period" is not provided. But we do not regard the insertion of the disjunctive "or" or the failure to provide for the premium payment in separate sections as indicative of the Legislature's intent to limit the remedy to a single payment per work day regardless of the number or type of break periods that are not provided. Rather, we construe the Legislature's use of the disjunctive as permitting an additional hour of pay for each work day that either type of break period is violated. We agree with the district court in *Marlo* that allowing an employee to recover one additional hour of pay for each type of violation per work day is not contrary to the "one additional hour" and "per work day" wording in subdivision (b). (*Marlo, supra,* 2009 U.S.Dist. Lexis 41948 at p. *21.)

We further agree with *Marlo* that construing section 226.7, subdivision (b), as permitting one premium payment for each type of break violation is in accordance with and furthers the public policy behind the meal and rest break mandates. (See *In re Prentiss C.* (1993) 14 Cal.App.4th 1484, 1487 [18 Cal.Rptr.2d 541] [a statute should be construed to promote rather than defeat the policy underlying the legislation].) The intent behind the IWC wage orders and section 226.7 was to provide an incentive to employers to comply with labor standards and compensate employees when those standards are violated. (*Murphy, supra,* 40 Cal.4th at pp. 1106, 1110, 1113–1114.) As the *Marlo* court concluded, "[B]y providing no additional premium wage when the second type of violation occurs, the alternative approach would encourage

---

Cal.Rptr.2d 186, 927 P.2d 296].) We note that the DLSE's enforcement manual corresponds to the IWC's orders by treating meal and rest periods separately. (DLSE, Enforcement Policies and Interpretations Manual (Mar. 2006) §§ 42.2–45.29, 45.3–45.3.7 (Manual).) For example, section 45.2.8 states, in relevant part, "No matter how many meal periods (rest period penalties are separate) are missed, only one meal period premium is imposed each day." Section 45.3.7 provides, "Premium [f]or [f]ailure [t]o [p]rovide [r]est [p]eriods is the same as that imposed for failure to provide meal periods. Note that only one hour for failure to provide a rest period may be imposed in each day regardless of the number of rest periods missed." (See Manual, available at <http://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcManual.pdf> [as of June 2, 2011].)

an employer to require an employee who has missed a ten-minute rest break to also miss his or her lunch period." (*Marlo, supra*, 2009 U.S.Dist. Lexis 41948 at pp. \*21–\*22.)

■ In short, we conclude, based upon the wording of section 226.7, subdivision (b), the IWC's wage orders, the public policy behind the statute and wage orders, and also the principle that we are to construe section 226.7 broadly in favor of protecting employees, that the employees in this case may recover up to two additional hours of pay on a single work day for meal period and rest period violations—one for failure to provide a meal period and another for failure to provide a rest period.

### DISPOSITION

The petition for writ of mandate is denied. Real parties are to recover their costs in this writ proceeding.

Flier, J., and Grimes, J., concurred.