Filed 7/19/13  Pena v. PNC Bank CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ANTHONY PENA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PNC BANK, N.A.,<br><br>    Defendant and Respondent. | D061660<br><br><br><br>(Super. Ct. No. 37-2011-00070975-CU-OR-EC) |


APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Stilwell & Associates and Andrew R. Stilwell for Plaintiff and Appellant.

Wolfe & Wyman, Kelly Andrew Beall and Jennifer J. Maas for Defendant and Respondent.

Plaintiff Anthony Pena appeals the trial court's judgment against him, issued after the court granted the motion of defendant PNC Bank, N.A. (PNC Bank) for judgment on the pleadings.  Pena, who sold his residence in a short sale, filed suit for declaratory relief to prevent PNC Bank from collecting a deficiency he owed on a second mortgage he had

1

obtained on his residence. Pena contends the trial court erred in ruling that he had failed to state a cause of action under the statutory and common law cited in his complaint. We conclude there was no error and, accordingly, affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Pena purchased his residence in July 1991. In May 2005, he obtained a loan from Bank of America for $441,000, which he secured with a recorded deed of trust on the property. A year later, Pena obtained a second mortgage in the amount of $62,900 from National City Bank, which subsequently sold that loan to PNC Bank. The second mortgage was also secured by a recorded deed of trust on the property.

Pena thereafter defaulted on one or both of the loans. In May 2010, he entered into a short sale agreement with a third party. That agreement was designed to alienate the property for less than the total amount Pena still owed on the mortgages, and thus required the banks' consent, which Pena obtained in August 2010. PNC Bank, however, approved the sale on the express conditions that it would receive at least $15,000, *and* that it would "continue to pursue collection and [Pena] will remain liable for the remaining deficiency balance after receipt of the PNC Proceeds of Sale, which will be approximately $37,729.35."

---

[1] Because Pena appeals from an order granting PNC Bank's motion for judgment on the pleadings, this factual summary is based on the allegations of Pena's complaint for declaratory relief and the documents attached to and incorporated in that complaint. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1232 (*Alliance Mortgage Co.*) [On motion for judgment on the pleadings "we treat the properly pleaded allegations of [the] complaint as true."].)

Escrow closed on the short sale on August 31, 2010. In connection with the closing, PNC Bank executed a reconveyance deed to Pena, and Pena then executed a grant deed to transfer ownership of the residence to the new buyer. Both deeds were recorded.

By letter dated June 22, 2011, PNC Bank notified Pena that it had accelerated the deficiency balance on his loan, and demanded payment of $38,153.99. To prevent PNC Bank's collection of the deficiency, on November 4, 2011, Pena filed this action seeking declaratory relief under Code of Civil Procedure sections 580d and 580e,[2] as well as under common law antideficiency protections.

PNC Bank answered the complaint on January 26, 2012, and on the same day, filed a motion for judgment on the pleadings as to all causes of action. The trial court granted PNC Bank's motion, finding that the statutory and common law antideficiency protections cited in the complaint did not apply to Pena's short sale.

### DISCUSSION

#### I. *Applicable Standards of Review*

A motion for judgment on the pleadings serves essentially the same function as a general demurrer, testing the sufficiency of a complaint to state a cause of action. (*Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 127 (*Sprague*).) Thus, an appeal from a judgment on the pleadings, as with an appeal from a demurrer dismissal, is reviewed de novo. (See, e.g., *Pardee Construction Co. v. Insurance Co. of the West*

---

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

(2000) 77 Cal.App.4th 1340, 1361, fn. 25.) We accept as true all properly pleaded factual allegations, but not contentions, deductions or conclusions of fact or law, and we must determine whether those alleged facts "support any valid cause of action against [the] defendant, or if not, whether the complaint could be reasonably amended to do so." (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1347, citing *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; accord, *Sprague*, *supra*, at p. 127.) The trial court's dismissal of a complaint without leave to amend is reviewed for abuse of discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Sprague*, *supra*, at p. 127.)

To the extent we are called upon to interpret the scope of statutory provisions, we do so according to well-established principles of statutory construction. "In construing a statute, a court's objective is to ascertain and effectuate legislative intent. [Citation.] To determine legislative intent, a court begins with the words of the statute, because they generally provide the most reliable indicator of legislative intent. [Citation.]" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871.) "If the statutory language is clear and unambiguous our inquiry ends. 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citations.] In reading statutes, we are mindful that words are to be given their plain and commonsense meaning." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 (*Murphy*).) Whenever possible, the court should construe a statute "in harmony with the whole system of law of which it is a part so that none of its provisions shall be useless or meaningless." (*Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 381 (*Kahn*).) The proper construction of a statute is a question of law which the court reviews independently. (See

4

*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699.)

II. *Pena Alleged No Cognizable Legal Theory Supporting Declaratory Relief*

A. *California's Antideficiency Laws*

"California has an elaborate and interrelated set of foreclosure and antideficiency statutes relating to the enforcement of obligations secured by interests in real property. Most of these statutes were enacted as the result of 'the Great Depression and the corresponding legislative abhorrence of the all too common foreclosures and forfeitures [which occurred] during that era for reasons beyond the control of the debtors.' [Citation.]" (*Alliance Mortgage Co.*, *supra*, 10 Cal.4th at p. 1236.) Pursuant to this statutory scheme, a creditor generally must rely on the security first before looking to the debtor to recover on a debt. This is the so-called "one form of action" rule. (See *Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35, 38, 39 (*Roseleaf*); see also § 726, subd. (a).) If the security is insufficient to make the creditor whole, the creditor's right to a judgment against the debtor personally for the deficiency may be limited or barred by specific statutory provisions. (*Roseleaf*, at pp. 38-39.)

For example, section 580b altogether bars deficiency judgments "after a sale" of property subject to a purchase money mortgage or deed of trust. (§ 580b, subds. (a), (b); see *Guild Mortgage Co. v. Heller* (1987) 193 Cal.App.3d 1505, 1510-1511 & fn. 7 (*Guild Mortgage Co.*).) Sections 580a and 726 concern nonjudicial and judicial foreclosures, respectively. The Legislature initially allowed the collection of deficiencies under those provisions (other than in purchase money transactions), but included in both the

5

limitation that any recovery may not exceed the difference between the amount of the indebtedness and the fair market value at the time of the sale (irrespective of the actual sale proceeds). (§§ 580a, 726, subd. (b).) The purpose of such "fair value" provisions was "to prevent creditors from buying in at their own sales at deflated prices and realizing double recoveries by holding debtors for large deficiencies." (*Roseleaf*, *supra*, 59 Cal.2d at p. 40.) Although the right to obtain a deficiency was the same under both statutes, "it was to the creditor's advantage to exercise a power of sale rather than to foreclose by judicial action" because "judicial foreclosure was subject to the debtor's statutory right of redemption [citation], whereas the debtor had no right to redeem from a sale under the power." (*Id.* at p. 43.)

Section 580d was enacted in response to this perceived discrepancy in debtor protection after nonjudicial foreclosure sales. (*Roseleaf*, *supra*, 59 Cal.2d at p. 43 ["It seems clear . . . that section 580d was enacted to put judicial enforcement on a parity with private enforcement."].) That provision states in part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein *has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust*." (§ 580d, italics added.) As a consequence of section 580d, a creditor has an election of remedies: "If the creditor wishes a deficiency judgment," he must proceed via a *judicial* foreclosure, and "his sale is subject to statutory redemption rights. If he wishes a sale resulting in nonredeemable title," he may proceed via a nonjudicial foreclosure, but then "he must forego the right to a

6

deficiency judgment. In either case the debtor is protected." (*Roseleaf, supra*, at pp. 43-44.) Read together, these antideficiency statutes "embrace a complete legislative scheme for *foreclosure* for defaulted debts." (*Guild Mortgage Co.*, *supra*, 193 Cal.App. 3d at p. 1511, italics added.)

The recession that began in 2008 produced another wave of economic distress, forcing many thousands of homeowners to lose their homes to foreclosure, or to choose another option not involving foreclosure that has become more prevalent in recent years: the short sale. "A 'short sale' is a sale of property for a price that is less than the amount of debt on the property, resulting in a shortfall of sales proceeds to pay off the existing loans." (4 Miller & Starr, Cal. Real Estate (3d ed. 2011, 2012-2013 Supp.) Deeds of Trust and Mortgages, § 10:66.10, p. 16; see Civ. Code, § 2943 [setting forth, inter alia, requirements pertaining to "short-pay agreement[s]" and related transactions].) A short sale generally requires the lender's approval. (See *Espinoza v. Bank of America, N.A.* (2011) 823 F.Supp.2d 1053, 1055 (*Espinoza*).) Although California's antideficiency laws already limited or barred a creditor's ability to collect a deficiency in a number of situations, they did not do so expressly with respect to deficiencies arising after short sales until 2010. That year, the Legislature enacted section 580e, which became effective on January 1, 2011. In its current version,[3] section 580e prohibits the collection of deficiencies after short sales under specified conditions, as follows:

---

[3]  Effective July 15, 2011, section 580e was amended to expand its application to short sales of property secured by any mortgage or deed of trust, not merely the first mortgage or deed of trust. (Stats. 2011, ch. 82, § 1.)

7

"No deficiency shall be owed or collected, and no deficiency judgment shall be requested or rendered for any deficiency upon a note secured solely by a deed of trust or mortgage for a dwelling of not more than four units, in any case in which the trustor or mortgagor sells the dwelling for a sale price less than the remaining amount of the indebtedness outstanding at the time of sale, in accordance with the written consent of the holder of the deed of trust or mortgage, provided that both of the following have occurred: ¶ (A) Title has been voluntarily transferred to a buyer by grant deed or by other document of conveyance that has been recorded in the county where all or part of the real property is located. ¶ (B) The proceeds of the sale have been tendered to the mortgagee, beneficiary, or the agent of the mortgagee or beneficiary, in accordance with the parties' agreement."

(§ 580e, subd. (a)(1).)

Still, not all situations fit neatly within the four corners of the foregoing statutes. A body of common law has developed over the years to address some of those situations. It is now well established, for example, that notwithstanding the "one form of action" rule, "when the value of the security has been lost through no fault of the creditor, the creditor may [immediately] bring a personal action on the debt." (*Bank of America v. Graves* (1996) 51 Cal.App.4th 607, 611; see also *Cadlerock Joint Venture, L.P. v. Lobel* (2012) 206 Cal.App.4th 1531, 1539 (*Cadlerock*).) Attempting to first foreclose on the secured property in such an instance would be an "idle" act. (*Hibernia Savings & Loan Society v. Thornton* (1895) 109 Cal. 427, 429 (*Hibernia*).) This exception does not apply, however, if the creditor is itself responsible for the loss of the security. (*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 48 (*Ghirardo*).) Thus, it has been long established that "a creditor may not unilaterally divest its security interest without the consent of the debtor." (*Cadlerock*, *supra*, at p. 1539; *Hibernia*, *supra*, at p. 429 [the mortgagee "will not be

8

permitted without the consent of the mortgagor to release the mortgage for the purpose of bringing an action upon the note"].)

In the same vein, the California Supreme Court has interpreted the antideficiency laws as protecting a debtor from a creditor's use of mechanisms that have the effect of evading or "thwarting the purpose of [the antideficiency laws] by a subterfuge." (*Freedland v. Greco* (1955) 45 Cal.2d 462, 468 (*Freedland*), see *id*. at p. 467 [where creditor gave debtor two notes covering only a single obligation, it could not, after default, nonjudicially foreclose on one note and then attempt to collect a deficiency judgment under the second note: "It is unreasonable to say the Legislature intended that section 580d could be circumvented by such a manifestly evasive device."].)

We are called upon in this appeal to determine how these various statutes and common law principles apply to Pena's situation, if at all. The trial court held as a matter of law that Pena could not rely on the statutory or common law antideficiency protections outlined above. We agree.

B. *Section 580d Does Not Apply to Short Sales*

In his first cause of action, Pena alleged he is entitled to declaratory relief by virtue of section 580d. The trial court determined section 580d does not apply in this case because Pena's residence was sold by him through a short sale, not on foreclosure by PNC Bank under the power of sale authorized in the deed of trust. This ruling is legally sound.

To determine the Legislature's intended scope of section 580d, we look first to the language of that statute, and if it is plain and unambiguous, we need look no further.

9

(*Kirby v. Immoos Fire Protection, Inc*. (2012) 53 Cal.4th 1244, 1250; *Murphy*, *supra*, 40 Cal.4th at p. 1103.)  Section 580d bars deficiency judgments only when real property secured by a mortgage or deed of trust "has been sold *by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust*."  (§ 580d, italics added.)  There is nothing ambiguous about this language.  Pena alleged that he sold his residence to a third party in a short sale—there was no nonjudicial foreclosure sale pursuant to the power of sale given to the trustee in the PNC Bank deed of trust.  These allegations render section 580d inapplicable.

Pena urges us to look beyond the language of the statute to its underlying policies.  He contends the intent behind the antideficiency laws is to bar the collection of deficiencies *regardless* of how the real property is disposed of after a default—except after a judicial foreclosure—and that allowing PNC Bank to collect the deficiency here would defeat that legislative purpose.  We are required, however, to give effect to *all* of a statute's terms according to their ordinary meaning.  (See *Murphy*, *supra*, 40 Cal.4th at p. 1103 ["[W]e are mindful that words are to be given their plain and commonsense meaning."].)  " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citations.]"  (*Ibid.*)  Pena's interpretation would require us to read out of the statute its specific limitation to deficiencies arising after a sale by a mortgagee or trustee pursuant to a power of sale.  This we may not do.  (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1066 ["A reading of a statute rendering 'some words surplusage is to be avoided.' [Citation.]"].)

10

Moreover, Pena cites no authority for his categorical assertion that at the time he completed his short sale, the law barred collection of any and all deficiencies save those arising after a judicial foreclosure sale. On the contrary, the antideficiency laws are an amalgam of statutes directed at particular types of transactions—nonjudicial foreclosure sales (sections 580a and 580d); judicial foreclosure sales (section 726); purchase money transactions (section 580b); and most recently, short sales (section 580e). When the Legislature began enacting these laws, the underlying purpose "was to protect debtors *in certain situations* from personal liability for large deficiency judgments after their property had been taken by the creditor through foreclosure proceedings, thereby preventing the aggravation of the economic downturn which would result if defaulting purchasers lost their land and in addition were burdened with personal liability." (*Guild Mortgage Co.*, *supra*, 193 Cal.App.3d at p. 1511, italics added.) Not surprisingly, courts that have interpreted the scope of the antideficiency provisions generally have done so in a manner consistent with their specific terms. (See, e.g., *Roseleaf*, *supra*, 59 Cal.2d at p. 43 [because section 580d applies only to a deficiency " 'upon a note secured by a deed of trust or mortgage' " pursuant to a " 'power of sale contained in *such* mortgage or deed of trust' " (italics added), that section applies only to the instrument securing the note sued upon and thus "does not appear to extend to a junior lienor whose security has been sold out in a senior sale"]; *Cadlerock*, *supra*, 206 Cal.App.4th at p. 1549 [holding that section 580d "simply does not apply on its face to a junior lien"]; *MDFC Loan Corp. v. Greenbrier Plaza Partners* (1994) 21 Cal.App.4th 1045, 1053, 1054, fn. 2 [section 580d's prohibition of deficiencies does not preclude creditor from exhausting its other security;

11

section 580b applies only to two-party transactions under specified circumstances, and not to a third party purchase money loan to acquire commercial property].)

Pena's proposed interpretation of section 580d thus is untenable because it cannot be reconciled with the actual language of that particular provision, and because it cannot be squared with the Legislature's elaborate statutory scheme of antideficiency protections as a whole. If Pena were correct, and section 580d properly could be construed to bar a creditor's collection of any deficiency not arising from a judicial foreclosure sale, then one might reasonably question why the Legislature did not simply enact that one antideficiency statute instead of enacting multiple such provisions addressing different types of transactions. Indeed, section 580e, on which Pena also relies, would appear to be entirely superfluous under Pena's construction of section 580d. In construing statutory language, we must harmonize the provision being construed "with the whole system of law of which [the statute] is a part so that none of its provisions shall be useless or meaningless." (*Kahn*, *supra*, 68 Cal.App.3d at p. 381.) Pena's approach would do violence to the Legislature's design, rather than promote consistency in interpretation and application.

Pena offers no persuasive reason why the public policies served by section 580d and the other provisions of California's antideficiency legislation would be compromised by enforcing each of those statutes according to their respective, explicit terms, or, put another way, why those policies should compel us to disregard those explicit terms. Division Three of the Fourth Appellate District very recently declined to construe section 580d in a manner that, much like the approach urged by Pena here, "ignore[d] the text [of

12

that statute] in favor of vindicating its underlying purposes." (*Cadlerock*, *supra*, 206 Cal.App.4th at p. 1548.) In that case, a junior lienor's security was eliminated by a senior sale, and the court was urged to apply section 580d to prevent the junior lienor from collecting the deficiency because the junior and senior loans had originated with the same lender (who had since assigned those two security interests to different entities). (*Cadlerock, supra*, at pp. 1546-1547.) The court held that nothing in section 580d barred the junior lienor's collection of the deficiency, and it declined to expand the reach of section 580d based on nothing more than the perceived imperatives of the policies underlying the statute. (*Cadlerock, supra*, at pp. 1547-1549.) In doing so, the court specifically criticized or distinguished other decisions (including two relied on by Pena— *Simon v. Superior Court* (1992) 4 Cal.App.4th 63 and *Freedland*, *supra*, 45 Cal.2d 462) to the extent those cases purported to impose, or were being read as imposing, a "judicially created prophylactic rule" unsupported by the text of section 580d. (*Cadlerock, supra*, at pp. 1548-1549.)

Pena nevertheless urges us to engage in the "free-ranging judicial policy making" Division Three rejected. (*Cadlerock*, *supra*, 206 Cal.App.4th at p. 1548.) To support his contention that section 580d does not require a nonjudicial foreclosure sale—or indeed, any sale at all—Pena ignores the language of that provision, and instead, relies on statements from various decisions outside of their proper context and represents them to be broad policy pronouncements supporting the interpretation he urges.

For example, Pena maintains certain California Supreme Court decisions have created a "paradigm" that "personal liability for a deficiency only exists upon judicial

13

foreclosure."  He suggests that in *Dreyfuss v. Union Bank of California* (2000) 24 Cal.4th 400, the Supreme Court stated that whether a sale occurs pursuant to nonjudicial foreclosure or a "private sale," the debtor has no personal liability for any deficiency.  But in the section cited by Pena, the *Dreyfuss* court was noting merely that the debtor is protected in a number of ways by the laws regulating nonjudicial foreclosures (other than section 580d), including the right to notice and to postpone the foreclosure in order to proceed in *some other fashion*, such as by redeeming the property or finding another purchaser.  (*Dreyfuss*, *supra*, at p. 411.)  In a section Pena omits, the court went on to discuss nonjudicial foreclosure proceedings themselves, and it was in *that* specific context that the court cited section 580d and made the statement, "Most important, the borrower is relieved from any *personal liability* on the debt."  (*Dreyfuss, supra*, at p. 411, italics in original.)  The *Dreyfuss* court in fact emphasized that section 580d "appl[ies] *only* when a personal judgment against the debtor is sought after a foreclosure." (*Dreyfuss*, at p. 407, italics added.)  Indeed, it specifically rejected the plaintiffs' proposal that the court "revitalize—i.e., . . . rewrite" the antideficiency laws to expand their protective reach:  "[W]e decline to engraft the proposed additional requirements onto the law.  Such an undertaking is a matter for legislative, not judicial, action."  (*Id*. at p. 412.)

Pena's reliance on *Western Security Bank, N.A. v. Superior Court* (1997) 15 Cal.4th 232 (*Western Security Bank*) is also misplaced.  In his appellate briefs, Pena quotes a statement drawn from that decision for the proposition that "if a lender's action 'has the practical consequences of requiring the debtor to pay *additional money* on the debt *after* <u>default or foreclosure</u>,' it violates the policy behind section 580d."  The quoted

14

portion, however, is actually taken from the Court of Appeal's decision in that case, *which the Supreme Court reversed*. (*Western Security Bank, supra*, at p. 250.) *Western Security Bank* concerned only whether a creditor may draw upon letters of credit to satisfy the unpaid portion of a purchase money mortgage after the borrowers' default and a nonjudicial foreclosure sale. The California Supreme Court specifically held that by means of a recently enacted statute, the Legislature clarified that creditors have recourse to such letters of credit because they are a form of obligation independent of the underlying transaction, and consequently, such recourse is not barred by California's antideficiency statutes. (*Id.* at pp. 245-247.) Nowhere in the Supreme Court's opinion did the court suggest the protections of section 580d applied in any situation other than where there is a sale by the trustee pursuant to the power of sale in the deed of trust.

On the contrary, the Supreme Court in *Western Security Bank* pointedly criticized the Court of Appeal's reasoning in that case, as well as that of the cases on which the intermediate appellate court had relied (including two cases also cited by Pena, *Commonwealth Mortgage Assurance Co. v. Superior Court* (1989) 211 Cal.App.3d 508 and *Union Bank v. Gradsky* (1968) 265 Cal.App.2d 40, 42-43). In particular, the Supreme Court observed that the Court of Appeal in the *Western Security Bank* case— misinterpreting the reach of these earlier decisions that had "inveighed against subterfuges that thwart the purposes of" section 580d (*Western Security Bank*, *supra*, 15 Cal.4th at pp. 249)—erroneously concluded that the letters of credit at issue in that case essentially were a " "device' " designed " 'to avoid the limitations of section 580d.' " (*Id.* at p. 250.) Pena uses the very same overly broad statements questioned by the Supreme

Court to argue that section 580d should be applied here. The fatal flaw in this assertion is that, just as in *Western Security Bank*, there was no subterfuge or evasion of section 580d in this case. As Pena's complaint and the attached documents reveal, Pena voluntarily undertook to sell his house in a short sale and he sought and obtained PNC Bank's consent to that sale. PNC Bank expressly conditioned its approval on Pena remaining liable on the debt for any deficiency, and Pena knowingly proceeded with the short sale on that basis. Contrary to Pena's claims, the short sale was not a "manifestly evasive device" designed to thwart the purposes of section 580d. (*Freedland*, *supra*, 45 Cal.2d at p. 467.)

In sum, Pena's contention that section 580d's protections extend to short sales, and not merely nonjudicial foreclosure sales, rests on a fundamentally unsound legal and factual foundation. We are unpersuaded that section 580d should be construed to mean anything other than what it plainly and unambiguously says.

C. *Section 580e Does Not Apply Because it Became Effective After Pena's Short Sale*

Pena also seeks refuge in section 580e, which prohibits the collection of deficiencies after a short sale. (§ 580e, subd. (a)(1).) Section 580e became effective on January 1, 2011, and was amended, effective July 15, 2011, to include short sales of properties covered not only by a first mortgage or deed of trust, but subsequent mortgages and deeds of trust as well. (Stats. 2010, ch. 701, § 1; Stats. 2011, ch. 82, § 1.) It is undisputed that Pena closed escrow on his short sale on August 31, 2010. The reconveyance deed executed by PNC Bank was recorded in September 2010. PNC Bank sent its collection letter to Pena in June 2011.

16

Pena contends that applying the recently enacted section 580e to his short sale would not be a retroactive application because "[t]he legislature was not regulating short sales in section 580e, but deficiencies," and for that reason, the statute properly may be applied to any deficiency existing on the day section 580e became effective. We conclude that the inevitable result of applying section 580e to already-completed short sales would be to "substantially change the legal consequences of past events" (*Western Security Bank*, *supra*, 15 Cal.4th at p. 243), and thus would constitute a prohibited retrospective application.

The Code of Civil Procedure, of which section 580e is a part, expressly provides that "[n]o part of [the Code] is retroactive, unless expressly so declared." (§ 3.) "[L]egislative provisions are presumed to operate prospectively, and . . . they should be so interpreted 'unless express language or clear and unavoidable implication negatives the presumption.' [Citation.]" (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1208 (*Evangelatos*).) But a "statute does not operate retrospectively simply because its application depends on facts or conditions existing before its enactment." (*Western Security Bank*, *supra*, 15 Cal.4th at p. 243.) "A statute has retrospective effect when it substantially changes the legal consequences of past events." (*Ibid.*) On the other hand, a statute that, for example, "merely *clarifies*, rather than changes, existing law does not operate retrospectively even if applied to transactions predating its enactment." (*Ibid.*, italics in original.)

By its terms, section 580e is not made retroactive, and nothing in the statute gives rise to a "clear and unavoidable" implication that the Legislature intended its

17

retrospective application.  (*Evangelatos, supra*, 44 Cal.3d at p. 1208.)  Pena concedes as much.  Furthermore, Pena does not argue that section 580e merely clarified existing law.  Rather, he attempts to avoid a retroactivity analysis by characterizing the aim of that statute as preventing creditors from collecting any deficiencies *in existence* as of the effective date of the statute, regardless of when the short sale occurred.  According to Pena, the Legislature did not specify in section 580e that the short sale resulting in the deficiency must have occurred on or after the statute's effective date, although it easily could have done so.

Pena's counsel made this same argument to the United States District Court in *Espinoza, supra*, 823 F.Supp.2d at page 1058.  Then-Chief Judge Irma E. Gonzalez rejected the argument, concluding that "[t]he practical effect [of] interpreting the statute as Plaintiffs suggest would be to extinguish the rights to deficiency balances negotiated between parties prior to the enactment of section 580e.  In other words, despite Plaintiffs' attempt to interpret section 580e so that it would apply to this case without also operating retroactively, applying the statute as Plaintiffs' request would cause the precise harm courts seek to avoid with the presumption against applying statutes retrospectively: interference with parties' antecedent rights."  (*Ibid*.)

Although we are not bound by federal district court decisions (see, e.g., *Castaneda v. Department of Corrections and Rehabilitation* (2013) 212 Cal.App.4th 1051, 1074), we find the federal court's reasoning persuasive and consistent with controlling California law.  " 'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' [Citations.]"

18

(*Aetna Casualty & Surety Co. v. Industrial Accident Com.* (1947) 30 Cal.2d 388, 391.)

"[T]he retrospective application of a statute may be unconstitutional . . . if it deprives a person of a vested right without due process of law, or if it impairs the obligation of a contract." (*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756; see also *United States v. Security Industrial Bank* (1982) 459 U.S. 70, 79, 82 [holding that lien avoidance statute was not to be construed to apply retrospectively to liens which attached before the enactment date, because to do so would raise constitutional concerns about interference with preexisting property rights].)

As explained, at the time Pena defaulted, various statutes restricted a creditor's ability to collect deficiencies arising in specified circumstances, e.g., after a sale of property subject to a purchase money mortgage (section 580b), or after a nonjudicial foreclosure (section 580d).  Before section 580e took effect, however, it was permissible for a creditor to collect a deficiency arising from a short sale (at least one not involving a purchase money mortgage), because no law prevented it.[4]  The legislative history of section 580e indicates that the statute made "*changes* to existing law," which became necessary due to the increase in short sales during the recent economic crisis, and the absence of any statute specifically addressing deficiencies arising after short sales.  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 931 (2009-2010 Reg. Sess.) as amended Mar. 25, 2010, pp. 3, 4 ["[s]ince there is no equivalent of Section 580d that is specific to

---

[4]    One published federal district court decision holds that section 580b applies to short sales involving purchase money loans.  (See *Rex v. Chase Home Finance LLC* (2012) 905 F.Supp.2d 1111, 1138-1145.)  Pena does not contend that the deficiency in this case is barred by section 580b.

19

short sales, the author asserts that . . . the bill would . . . [ensure] that borrowers do not have a higher amount of liability after a short sale than [after] a foreclosure sale," and thus "equalize[] anti-deficiency protection between short sales and foreclosures"] italics added, capitalization omitted.)

In other words, the effect of section 580e was to deprive creditors of one means of recourse that previously had been available to them. PNC Bank had a legal right to collect the deficiency on Pena's loan, and asserted that right as a condition to giving its consent to the short sale. Pena completed the sale on that basis. Applying section 580e would deprive PNC Bank of that vested property interest and, hence, "substantially change the legal consequences of past events." (*Western Security Bank*, *supra*, 15 Cal.4th at p. 243.)

Pena maintains that the thrust of the antideficiency laws is, *and was at the time of his default*, to permit collection of a deficiency *only* after a judicial foreclosure. As explained previously, however, if that were the case there would have been no need for section 580e. Plainly, the Legislature perceived a gap in the antideficiency laws created by the absence of any statute specifically addressed to short sales, and it closed that gap with the enactment of section 580e. But because the very nature of that statute was to deprive creditors of a substantive remedy previously available to them (and in this case, a remedy PNC Bank had already begun to enforce), it properly should be construed to

20

apply only to short sales occurring after its effective date, absent a clear and unequivocal statement by the Legislature to the contrary.[5]

Finally, we note that the text of section 580e supports this conclusion. As the *Espinoza* court observed, the statute prohibits collection of a deficiency "in any case in which the trustor or mortgagor *sells* the dwelling for a sale price less than the remaining amount of the indebtedness outstanding at the time of the sale." (§ 580e, subd. (a)(1), italics added; see *Espinoza*, *supra*, 823 F.Supp.2d at p. 1059.) The use of the term "sells," as opposed to, for example, "sells or has sold," indicates an intention that the new law be applied to future sales only. The legislative history of both the original statute and its 2011 amendment also use forward-looking language. Thus, the 2010 analysis of the original legislation, in explaining the initial limit of the statute to first mortgages or deeds of trust, notes that the new law "would not relieve all borrowers of all *future* liability after [a] short sale." (Analysis of Sen. Bill 931, at p. 4, italics added.) An analysis of the 2011 amendment explains that the amendment "would apply the protections of [section 580e] to all mortgages, thus, providing full liability protection for homeowners who *receive* approval for the short sale." (Assem. Com. on Judiciary, Analysis of Sen. Bill 458

---

5       It is telling that after the passage of sections 580a and 580b, courts held that their antideficiency protections could apply only prospectively—that is, to deeds of trust executed and sales made after the effective date of those provisions. (See, e.g., *Estate of Farley* (1944) 63 Cal.App.2d 130, 132 [sections 580a and 580b "have been held inapplicable to deeds of trust executed before their effective date"]; *Bechtel v. Nelson* (1935) 10 Cal.App.2d 66, 67-68 [section 580a held not to apply to deeds of trust executed prior to, and sales conducted before, the effective date of that provision, because "the legislature did not so declare it, and a retroactive application would be an impairment of contractual obligations"].)

21

(2011-2012 Reg. Sess.) as amended May 16, 2011, p. 4, italics added; see *id*. at pp. 4-5 ["By removing the language limiting application to first mortgages, this bill would provide complete liability protection for owners who successfully *complete* a short sale."] italics added.)  Again, the use of the present tense indicates the statute was intended to apply to short sales that had not yet taken place.

We conclude section 580e does not apply to the deficiency created after the short sale of Pena's residence, as that sale was completed before the effective date of the statute.

D.  *The Principles Enunciated in* Hibernia *and its Progeny Do Not Apply*

In his third cause of action, Pena invokes certain common law principles that protect debtors from collection of a deficiency "after a secured creditor does any act or omission that causes them to lose or devalue their security interest."  Pena alleges that PNC Bank, by approving the short sale, accepting proceeds from that sale, and executing a reconveyance deed, "willfully" released and lost its security interest, thus barring it from collecting the deficiency.  We agree with the trial court that this principle has no application here.

Pena's third cause of action is based on a rule enunciated by the California Supreme Court over a century ago in *Hibernia*, *supra*, 109 Cal. 427.  In that case, a husband and wife had executed a mortgage and promissory note on a homestead that was the community property of the couple.  Upon the wife's death, the bank did not make any claim against her estate based on the note and mortgage, but rather, sought to hold the husband personally liable for the debt.  (*Id*. at p. 428.)  As a consequence, the trial court

22

held, the mortgage lien was extinguished, but that court rendered a personal judgment for the amount of the note against the husband.  (*Ibid*.)  The Supreme Court held that if the value of a mortgage property has been lost through no fault of the mortgagee, the mortgagee "need not go through the idle form of bringing an action for foreclosure before he can have a judgment on the note."  (*Id*. at p. 429.)  But "when the mortgagee, by his own act or neglect, deprives himself of the right to foreclose the mortgage, he at the same time deprives himself of the right to an action upon the note.  He will not be permitted without *the consent of the mortgagor* to release the mortgage for purposes of bringing an action upon the note."  (*Ibid*., italics added.)  The court held the bank in that case had been obligated to foreclose on the mortgage first.  (*Id*. at pp. 429-430.)

Other decisions since *Hibernia* and the enactment of the antideficiency laws have reaffirmed the basic rule that a mortgagee may sue to collect on the debt directly if the security is lost through no fault of its own and foreclosure would thus be a futile act, but if the mortgagee destroys or devalues its security interest in the subject property through its own willful or negligent act, it may not then proceed directly against the mortgagor to collect the underlying debt—at least not without the debtor's consent.  (See, e.g., *Ghirardo, supra*, 14 Cal.4th at p. 48 [lender who made a payoff demand, received the payment, and then reconveyed the deed of trust is barred from seeking under section 726 an additional sum he allegedly inadvertently failed to include in the payoff demand]; *Pacific Valley Bank v. Schwenke* (1987) 189 Cal.App.3d 134 [bank could not sue Schwenke, a comaker of a promissory note, to collect on the debt when it had agreed with

23

O'Brien, the other maker of the note, to release and reconvey the security without Schwenke's knowledge or consent].)

This line of authority does not apply here. As the trial court observed, although PNC Bank did execute a reconveyance deed and thus lost its security interest, it did so while expressly continuing to hold Pena liable for any unpaid balance, with Pena's knowledge and consent (the latter evidenced by the fact that the short sale was completed).[6] In fact, nothing in the complaint suggests that Pena's decision to do a short sale was anything but voluntarily, and the allegations of the complaint certainly demonstrate that Pena knew the sale would require PNC Bank's consent and reconveyance of the trust deed. Pena himself was thus a willing and knowing participant in the sale, and by seeking PNC Bank's consent to the sale, Pena effectively invited PNC Bank to give up its security interest in exchange for the sale proceeds plus Pena's promise to pay any deficiency.

In *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991 (*Wozab*), the court determined that even if a creditor takes steps that result in the loss or waiver of the security interest under section 726's "one form of action" rule, that does not necessarily

---

[6] We also observe that the *Hibernia* line of case law appears directed more at the application of the "one form of action" rule embodied in section 726, and the circumstances under which a creditor may proceed immediately and directly against the debtor instead of foreclosing on the security first. This case, however, concerns whether a creditor, having already received partial repayment of a loan from a short sale of the real property, may proceed to collect the deficiency balance. (Cf. *Cadlerock*, *supra*, 206 Cal.App.4th at p. 1549 ["In our view, courts purporting to interpret section 580d have conflated the analysis of section 580d with the one form of action rule."].)

24

mean the creditor loses the right to sue to recover the debt—i.e., the security may be extinguished, but the debt is not. (*Wozab, supra*, at p. 1004.) In *Wozab*, the bank lost its security interest by immediately taking setoffs against the debt from the debtors' bank accounts instead of foreclosing first. (*Id*. at p. 1001-1002.) But the court held that because the debtors acquiesced in the bank's decision not to foreclose, and accepted reconveyance of the trust deed, they could not be heard to complain, under section 726, that the bank failed to properly proceed against the security first, in an effort to prevent the bank from suing them on the underlying debt. To rule otherwise, the court observed, "would be to encourage gamesmanship," would constitute a "gross injustice" and would result in a windfall to the debtors. (*Wozab, supra*, at p. 1005.)

Similarly, here, Pena voluntarily conducted a short sale, which he knew would result in a reconveyance of the trust deed, and also sought and obtained the lender's consent to that sale, which he obtained on the express condition that he remain liable for any remaining balance on the loan. Pena now seeks to avoid liability for that deficiency, arguing that PNC Bank waived its right to collect it by giving up its security interest. In the absence of a statute requiring a different result, we reject Pena's argument since it was Pena himself who acquiesced in the elimination of PNC Bank's security interest.[7]

---

[7] Pena also argues that he did not, and could not, waive the protections of the antideficiency statutes because legally they cannot be waived. But we do not believe "waiver" is the dispositive concept here. Sections 580d and 580e do not protect Pena from collection of the deficiency at issue here, as previously explained, so there can be no "waiver" of the protections of those statutes. In the absence of any applicable antideficiency statute, Pena is bound by his agreement to pay the deficiency, which was part of the consideration he gave for PNC Bank's approval of the short sale.

25

III. *The Trial Court Properly Decided the Motion for Judgment on the Pleadings and Properly Denied Leave To Amend*

Finally, we address Pena's argument that the trial court erred in granting PNC Bank's motion for judgment on the pleadings without leave to amend (thus, effectively concluding Pena could not state a claim), instead of determining on the merits whether Pena was entitled to declaratory relief.

California law permits the courts to grant declaratory relief "in cases of actual controversy relating to the legal rights and duties of the respective parties." (§ 1060.) Furthermore, dismissal of a claim for declaratory relief—as opposed to a declaration denying such relief—is disfavored where an actual controversy has been alleged:

> "It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties . . . and requests that the rights and duties be adjudged. [Citation.] If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration."

(*Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 549-550; citing *Maguire v. Hibernia Savings & Loan Society* (1944) 23 Cal.2d 719, 728-729; see 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 877, p. 294 (Witkin) ["the rule is now established that the . . . complaint is sufficient if it shows an actual controversy; it need not show that the plaintiff is in the right"].)

A number of cases have held, however, that claims for declaratory relief may be determined on demurrer or motion for judgment on the pleadings where the complaint on its face shows such relief is not available as a matter of law. "A motion for judgment on

26

the pleadings is an appropriate means of obtaining an adjudication of the rights of the parties in a declaratory relief action if those rights can be determined as a matter of law from the face of the pleading attacked, together with those matters of which the court may properly take judicial notice." (*Allstate Insurance Co. v. Kim W.* (1984) 160 Cal.App.3d 326, 330; accord, *Silver v. City of Los Angeles* (1963) 217 Cal.App.2d 134, 141-142 (*Silver*) ["Where plaintiff makes no case on the merits and a declaratory relief action would merely produce a useless trial, a dismissal is proper."].)

The Code of Civil Procedure expressly provides that the court "may refuse to exercise the power granted by this chapter in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." (§ 1061.) This provision permits the trial court to dismiss declaratory relief allegations that do not state a cause of action. (See, e.g., *Orloff v. Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 489 [affirming dismissal after order sustaining demurrer as to declaratory relief count; where plaintiff's allegations did "not measure up to the requirements of an action for declaratory relief," the trial court "properly refused to exercise its power to entertain the complaint upon that count"]; *Silver*, *supra*, 217 Cal.App.2d at pp. 141, 142 [trial court's dismissal of the complaint after sustaining defendant's demurrer was proper under section 1061: "[W]here the complaint is devoid of facts showing the necessity or propriety of a declaration it is not reversible error per se to refuse declaratory relief by an order sustaining a general demurrer without leave to amend," and, indeed, "[a] trial on the purported issues alleged would be a useless formality."].)

27

Even accepting all the allegations of Pena's complaint as true (including the allegation that there existed an actual, justiciable controversy between the parties), it was entirely proper, under the foregoing authorities, for the trial court to grant PNC Bank judgment on the pleadings when Pena had failed to state a cause of action as a matter of law. Assuming without deciding that the better course would have been simply to deny Pena declaratory relief rather than grant PNC Bank's motion, we are not required to reverse because doing so would be pointless. "Even though a dismissal order is erroneous, reversal would be an idle act if the plaintiff's substantive claim is legally untenable, and the only result would be the entry of a declaratory judgment adverse to the plaintiff." (Witkin, *supra*, § 878, p. 296, citing *Haley v. Los Angeles County Flood Control District* (1959) 172 Cal.App.2d 285, 294 [appellate court's ruling "that plaintiff cannot recover upon the cause of action which he attempts to state" achieves "[t]he object of declaratory relief"].) Put another way, Pena was not prejudiced by the trial court's ruling, which effectively, albeit perhaps not literally, denied him declaratory relief. (See, e.g., *Cassim v. Allstate Insurance Co*. (2004) 33 Cal.4th 780, 800 [court will reverse only on a showing of prejudicial error resulting in a miscarriage of justice].)

We also conclude that the trial court did not abuse its discretion in denying Pena leave to amend the complaint to add an estoppel theory. [8] At best, Pena made only a cursory request for leave to amend in his opposition to the motion for judgment on the pleadings. Significantly, he never intimated to the trial court, either in his opposition or

---

[8]     The trial court did not specifically address the amendment issue in its order granting the motion for judgment on the pleadings.

28

at the hearing, that his claim for declaratory relief would be cognizable under an estoppel theory. A central rule of appellate practice is that legal theories not presented to the trial court may not be urged for the first time on appeal. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767 (*Greenwich*) [appellant waives argument by failing to raise it in the trial court]; *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [" 'The rule is well settled that the theory [of liability] upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. [Citation.]' "].)

In any event, the trial court was within its discretion in not granting leave to amend because Pena cannot allege facts sufficient to state a claim for estoppel. Pena has admitted by alleging in his complaint (and by incorporating relevant documents therein) that he elected to proceed via short sale, he sought and obtained PNC Bank's consent, and he completed the sale with knowledge that PNC Bank expressly retained its ability to collect from Pena any unpaid balance remaining on the underlying loan after the sale. Pena therefore cannot now allege, let alone prove, that PNC Bank ever promised that it would not pursue the deficiency, or that he ever relied on such a promise. (See, e.g., *Setliff v. E. I. Du Pont de Nemours & Co*. (1995) 32 Cal.App.4th 1525, 1534 [on demurrer, "[p]laintiff is bound by an admission in his pleadings" and the admission negates any attempt to allege facts to the contrary].) He therefore cannot establish at least two essential elements of a promissory estoppel claim. (See, e.g., *US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901 [elements of promissory estoppel cause of action include a clear and unambiguous promise and reliance by the party to

whom promise is made].)  Pena's insistence that PNC Bank essentially promised never to attempt to collect a deficiency except in the case of judicial foreclosure ignores the alleged and undisputed facts and is based on legal arguments we already have rejected.

## IV.  DISPOSITION

The judgment is affirmed.  Respondent may recover its costs of appeal.

 

 

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.